Jan M. Sexton SALMI,
Plaintiff-Appellant,

v.

**SECRETARY OF HEALTH AND
HUMAN SERVICES,**
Defendant-Appellee.

No. 85–1073.

United States Court of Appeals,
Sixth Circuit.

Sept. 19, 1985.

Dolores M. Coulter, argued, Michigan Protection & Advocacy Service of Developmentally Disabled Citizens, Inc., Lansing, Mich., for plaintiff-appellant.

Martin F. Palus, argued, Asst. U.S. Atty., Grand Rapids, Mich., for defendant-appellee.

Before KENNEDY and KRUPANSKY, Circuit Judges, and WEICK, Senior Circuit Judge.

CORNELIA G. KENNEDY, Circuit Judge.

Plaintiff appeals the District Court judgment affirming the finding of the Administrative Law Judge ("ALJ") that plaintiff does not suffer from an impairment or combination of impairments, which significantly limits her ability to perform basic work-related functions. The appellant, Jan Sexton Salmi, was born July 24, 1962 and was eighteen-years old when she filed an application for supplemental security income benefits on May 7, 1981. Plaintiff alleged disability from birth because of mental retardation.

Plaintiff's parents enrolled her in a special education program for the mentally retarded in the third grade. After the eighth grade, plaintiff was transferred briefly to regular education classes. On February 5, 1979, plaintiff's parents filed a petition in Ontonagon County Probate Court seeking to have plaintiff declared a ward of the court. The Probate Court adjudicated plaintiff a ward of the court on February 8, 1979 and placed her in a foster care home. In January 1980, school authorities re-enrolled plaintiff in special education classes. Plaintiff graduated with a special education diploma in 1981.

Plaintiff has no relevant work experience. Plaintiff's school referred her to a work experience program in March 1980. For three months, plaintiff worked eight hours per week in the kitchen at a senior citizens center. During the summer of 1980, plaintiff worked ten hours per week in a St. Vincent de Paul store sorting clothes. During the spring of 1981, plaintiff worked fifteen hours per week cleaning cages for the Humane Society. The Comprehensive Employment and Training Act youth programs provided the funding for these three programs. Plaintiff also un-successfully attempted babysitting. Plaintiff worked for several weeks during the summer of 1982 in a restaurant. At the time of the administrative hearing, plaintiff had agreed to work eighty-nine hours per month in another senior citizens center for the Michigan Department of Social Services as a requirement for receiving general assistance benefits.

Plaintiff underwent IQ testing four times during the ten-year period from 1972–1981. In 1972, plaintiff received a verbal score of 71, a performance score of 82, and a full scale score of 74 on the Wechsler, Bender Gestalt and Human Figure Drawing Tests. In 1976, plaintiff received a verbal score of 65, a performance score of 90, and a full scale score of 75 on the Wechsler Intelligence Scale for Children-Revised. The Wide Range Achievement Test indicated that plaintiff was functioning at a second grade academic skill level and the Bender Gestalt Test indicated a visual perceptual motor age of approximately eight and a half years. In 1979, plaintiff achieved a verbal score of 76, a performance score of 90, and a full scale score of 81 on the Wechsler Adult Intelligence Scale ("WAIS"). In 1981, in connection with her application for supplemental security income benefits, plaintiff received a verbal score of 73, a performance score of 105, and a full scale score of 86 on the WAIS. The examiner noted, however, that plaintiff's high score on the performance section might not be valid because plaintiff had taken the test more than once.

Defendant-appellee, the Secretary of the Department of Health and Human Services ("the Secretary") denied plaintiff's application for supplemental security income benefits initially and again on reconsideration. Plaintiff requested a hearing before an ALJ. The ALJ decided that plaintiff was not entitled to supplemental security income because plaintiff did not suffer from a severe impairment. The ALJ's determination became the final decision of the Secretary when the Appeals Council refused to grant review. Plaintiff brought suit in the United States District Court for the West-

ern District of Michigan. The District Court issued an opinion and order denying plaintiff's motion for summary judgment, affirming the Secretary's findings, and dismissing the complaint.

Plaintiff raises five issues on appeal: (1) Whether the District Court erred by using the standards for mental retardation found in the Listing of Impairments, 20 C.F.R. § 404, Subpart P, Appendix 1, Section 12.05 in determining whether plaintiff's impairment qualified as severe under the meaning of 20 C.F.R. § 416.920(c); (2) Whether 20 C.F.R. § 416.920(c), the severity regulation which allows the Secretary to deny a claim for supplemental security income benefits when an claimant does not suffer from a severe impairment based on medical evidence alone and without considering a claimant's age, education, and work experience, conflicts with the definition of disability in 42 U.S.C. § 1382c(a)(3)(B); (3) Whether, assuming the severity regulation does not conflict with the definition of disability, this Court should construe the severity regulation narrowly to eliminate from further consideration only those claimants who suffer from such slight impairments that the impairments could not affect the claimant's ability to work regardless of the claimant's age, education, or prior work experience; (4) Whether substantial evidence supports the Secretary's finding that the plaintiff does not suffer from a severe impairment; and (5) Whether the ALJ improperly substituted her own medical opinion for the testimony of medical experts to support her finding that plaintiff did not have a severe impairment, by making conclusions regarding plaintiff's mental impairments based on her own observations of plaintiff at the hearing.

**1.** Title 20 C.F.R. § 416.920 (1985) provides:

(a) *Steps in evaluating disability.* We consider all material facts to determine whether you are disabled. If you are doing substantial gainful activity, we will determine that you are not disabled. If you are not doing substantial gainful activity, we will first consider your physical or mental impairment(s). Your impairment(s) must be severe and meet the duration requirement before we can find you

For the reasons set forth below, we hold that although the regulation does not conflict with the statute, an impairment qualifies as non-severe only if, regardless of a claimant's age, education, or work experience, the impairment could not affect the claimant's ability to work. Under this standard, substantial evidence does not support the Secretary's finding that plaintiff did not suffer from a severe impairment. Accordingly, we reverse the District Court's judgment and remand the case to the District Court with instructions to remand this case to the Secretary for completion of the sequential evaluation process. In light of this disposition, we do not consider plaintiff's first and fifth issues.

I.

Appellant asserts that the severity requirement of the sequential evaluation process in 20 C.F.R. § 416.920 conflicts with 42 U.S.C. § 1382c(a)(3)(B), the statutory definition of disability. Title 42 U.S.C. § 1382c(a)(3)(B) provides in pertinent part:

[A]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

The Social Security Administration has promulgated 20 C.F.R. § 416.920, which establishes a sequential process for evaluating a disability claim.[1] Under this five-step se-

to be disabled. We follow a set order to determine whether you are disabled. We review any current work activity, the severity of your impairment(s), your residual functional capacity and your age, education, and work experience. If we can find that you are disabled or not disabled at any point in the review, we do not review further.

(b) *If you are working.* If you are working and the work you are doing is substantial

quential evaluation process,[2] the Secretary initially determines whether a claimant currently engages in substantial gainful activity. If so, the claimant does not qualify as disabled. Second, the Secretary examines the severity of the claimant's impairment. If the claimant does not have a severe impairment which significantly limits the claimant's ability to do basic work activities, the claimant cannot qualify as disabled. Third, the Secretary compares the claimant's impairment to the "Listing of Impairments" in 20 C.F.R. § 404, Subpart P, Appendix 1. The Secretary will find the claimant disabled if Appendix 1 lists the claimant's impairment or the claimant's impairment qualifies as the medical equivalent of a listed impairment. Fourth, if the claimant's impairment does not meet or equal a listed impairment, the Secretary next determines whether the claimant can perform the claimant's past work. If so, the claimant does not qualify as disabled. Finally, if the claimant cannot perform past work, the Secretary considers the claimant's residual functional capacity and the transferability of any skills the claimant may possess to determine whether the claimant qualifies as disabled.

In this case, the ALJ terminated the evaluation process when she determined that plaintiff did not have an impairment or combination of impairments, which significantly limited plaintiff's ability to do basic work related functions. Title 20 C.F.R. § 416.921 (1985) defines and explains a non-severe impairment as follows:

(a) *Non-severe impairment(s).* An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities.

(b) *Basic work activities.* When we talk about basic work activities, we mean the abilities and aptitudes necessary to do most jobs. Examples of these include—

(1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;

(2) Capacities for seeing, hearing, and speaking;

(3) Understanding, carrying out, and remembering simple instructions;

(4) Use of judgment;

(5) Responding appropriately to supervision, co-workers and usual work situations; and

(6) Dealing with changes in a routine work setting.

gainful activity, we will find that you are not disabled regardless of your medical condition or your age, education, and work experience.

(c) *You must have a severe impairment.* If you do not have any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities, we will find that you do not have a severe impairment and are, therefore, not disabled. We will not consider your age, education, and work experience.

(d) *When your impairment(s) meets or equals a listed impairment in Appendix 1.* If you have an impairment(s) which meets the duration requirement and is listed in Appendix 1 or is equal to a listed impairment(s), we will find you disabled without considering your age, education, and work experience.

(e) *Your impairment(s) must prevent you from doing past relevant work.* If we cannot make a decision based on your current work activity or on medical facts alone, and you have a severe impairment(s), we then review your residual functional capacity and the physical and mental demands of the work you have done in the past. If you can still do this kind of work, we will find that you are not disabled.

(f) *Your impairment(s) must prevent you from doing any other work.* (1) If you cannot do any work you have done in the past because you have a severe impairment(s), we will consider your residual functional capacity and your age, education, and past work experience to see if you can do other work. If you cannot, we will find you disabled. (2) If you have only a marginal education, and long work experience (i.e., 35 years or more) where you did only arduous unskilled physical labor, and you can no longer do this kind or work, we use a different rule (see § 416.-962).

2. In *Garner v. Heckler,* 745 F.2d 383, 387 (6th Cir.1984), this Court applied a seven-step analysis in considering a claim for social security disability and supplemental security income benefits. The seven-step analysis expanded upon the regulation's five-step process by dividing the second step into two steps and adding the one-year requirement.

Under 20 C.F.R. § 416.920(c), the Secretary determines severity without consideration of the claimant's age, education, and work experience. Title 42 U.S.C. § 1382c(a)(3)(B), however, requires physical or mental impairment or impairments of such severity that a claimant "is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy...." The ALJ did not consider plaintiff's age, education, or work experience. Plaintiff contends that although the ALJ followed the sequential evaluation process regulations, the regulations conflict with the statute because the regulations do not require the ALJ to consider a claimant's age, education, and work experience in assessing the severity of the claimant's impairment.

■ In *Gist v. Secretary of Health and Human Services*, 736 F.2d 352, 357–58 (6th Cir.1984), this Court expressly rejected the same argument.[3] The court wrote:

We find no merit in Gist's contention that the sequential procedure for evaluating disability, under which no further inquiry is necessary if a claimant is determined not to have a severe impairment, *see* 20 C.F.R. § 416.920(a) (1983), is improper. The requirement that an impairment be severe flows directly from the statute. *See* 42 U.S.C. § 1382c(a)(3)(B). Since the severe impairment requirement is an absolute one, in that if a claimant lacks a severe impairment he can receive benefits under no conceivable set of facts, there is no need for the Secretary to consider other factors, such as age, education and vocational skills, if this crucial element is lacking.

A panel of this Court cannot overrule the decision of another panel. The prior decision remains controlling authority unless an inconsistent decision of the United States Supreme Court requires modification of the decision or this Court sitting en banc overrules the prior decision. *See, e.g., Timmreck v. United States*, 577 F.2d 372, 376 n. 15 (6th Cir.1978), *rev'd on other grounds*, 441 U.S. 780, 99 S.Ct. 2085, 60 L.Ed.2d 634, *on remand*, 600 F.2d 1228 (6th Cir.1979).

■ Although the regulation conflicts with a literal reading of the statute, Congress apparently voiced its approval of the sequential evaluation process in enacting the Social Security Disability Benefits Reform Act of 1984. The Joint Explanatory Statement of the Committee of Conference observed:

Under current policies, if a determination is made that a claimant's impairment is not severe, the consideration of the claim ends at that point....

The conferees also believe that in the interests of reasonable administrative flexibility and efficiency, a determination that an individual is not disabled may be based on a judgment that an individual has no impairment, or that the medical severity of his impairment, or combination of impairments is slight enough to warrant a presumption, even without a full evaluation of vocational factors, that the individual's ability to perform [substantial gainful activity] is not seriously affected. The current "sequential evaluation process" allows such a determination and the conferees do not intend to either eliminate or impair the use of that process.

H.R.Conf.Rep. No. 1039, 98th Cong., 2d Sess. 30, *reprinted in* 1984 U.S.Code Cong. & Ad.News 3080, 3087–88. In *Red Lion Broadcasting Co. v. FCC*, 395 U.S. 367, 380–81, 89 S.Ct. 1794, 1801–02, 23 L.Ed.2d 371 (1969) (footnote omitted), the Supreme Court recognized that: "Subsequent legislation declaring the intent of an earlier statute is entitled to great weight in statu-

---

**3.** The Sixth Circuit is the only circuit that has expressly upheld the regulation's validity. *See Stone v. Heckler*, 752 F.2d 1099, 1101 n. 4 (5th Cir.1985). The Seventh Circuit recently held the regulation invalid. *See Johnson v. Heckler*, 769

F.2d 1202 (7th Cir.1985). *See also Baeder v. Heckler*, 768 F.2d 547 (3d Cir.1985) (holding 20 C.F.R. § 404.1520(c) invalid as conflicting with the Social Security Act).

tory construction." The Supreme Court, however, has also warned that: "A mere statement in a conference report of [subsequent] legislation as to what the Committee believes an earlier statute meant is obviously less weighty." *Consumer Product Safety Commission v. GTE Sylvania, Inc.*, 447 U.S. 102, 118 n. 13, 100 S.Ct. 2051, 2061 n. 13, 64 L.Ed.2d 766 (1980). Nevertheless, the Joint Explanatory Statement indicates that Congress was fully aware of the challenged regulation. The Joint Statement demonstrates the conferees' acceptance of the sequential evaluation process and acceptance of the fact that once the Secretary has established, based on the medical evidence alone, that a claimant does not have a severe impairment, the Secretary may terminate review of the claimant's application without evaluation of the claimant's age, education, or work experience. Consequently, we uphold the regulation's validity.

## II.

Plaintiff argues that if this Court upholds the regulation as valid, this Court should interpret the regulation as requiring only a *de minimis* threshold showing of severity. Several courts have given the regulation such a construction. *See, e.g., Estran v. Heckler*, 745 F.2d 340, 341 (5th Cir.1984); *Evans v. Heckler*, 734 F.2d 1012, 1014 (4th Cir.1984); *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir.1984); and *Chico v. Schweiker*, 710 F.2d 947, 954 (2d Cir.1983).

The Secretary argues that the severity requirement in 20 C.F.R. § 416.920(c) imposes more than a *de minimis* threshold requirement. Title 42 U.S.C. § 1382c(a)(3)(B) requires a severe impairment before the Secretary may award benefits. *See Gist v. Secretary, supra.* The Secretary notes that when Congress first defined disability in the Social Security Amendments of 1954, Pub.L. No. 83–761, § 106, 68 Stat. 1052, 1080 (1954), Congress premised the definition of disability upon the existence of a severe condition. The Senate Committee on Finance indicated that disability requires (1) a medically determinable impairment of serious propor-

tions and (2) the present inability to engage in substantial gainful activity by reason of the impairment's severity. S.Rep. No. 1987, 83rd Cong., 2d Sess. (1954), *reprinted in* 1954 U.S.Code Cong. & Ad.News 3710, 3730. The Secretary argues that at least implicitly, Congress did not intend a standard as lenient as *Brady*. The Secretary's contention, however, conflicts with the Secretary's previous interpretations of the same statutory requirement.

In the Social Security Amendments of 1967, Congress amended the Social Security Act by adding a definition of disability. Pub.L. No. 90–248, § 158(b), 81 Stat. 821, 868 (1968) (codified at 42 U.S.C. § 423(d)(2)(A)). Accordingly, the Secretary amended the regulations governing the disability determination process. The 1968 regulations provided:

> Medical considerations alone can justify a finding that the individual is not under a disability where the only impairment is a slight neurosis, slight impairment of sight or hearing, or other slight abnormality or a combination of slight abnormalities.

33 Fed.Reg. 11,749, 11,750 (1968) (to be codified at 20 C.F.R. § 404.1520(a)). In the Social Security Amendment of. 1972, Congress used an identical definition of disability for supplemental security income purposes. Pub.L. No. 92–603, § 1614(a), 86 Stat. 1329, 1472 (1972) (codified at 42 U.S.C. § 1382c(a)(3)(B)). *See* Determination of Disability or Blindness, 39 Fed.Reg. 1624, 1625 (1974) (to be codified at 20 C.F.R. § 416.902(a)).

In 1978, the Secretary issued new regulations to state:

> (c) *Does the individual have any severe impairments?* Where an individual does not have any impairment(s) which significantly limits his or her physical or mental capacity to perform basic work-related functions, a finding shall be made that he or she does not have a severe impairment and therefore is not under a disability without consideration of the vocational factors.

Rules for Adjudicating Disability Claims in Which Vocational Factors Must Be Considered, 43 Fed.Reg. 55,349, 55,371 (1978) (to be codified at 20 C.F.R. § 416.903(c)). In the comments to the amended regulations, the Secretary asserted that the new language clarified the previous regulations and that:

[T]here is no intention to alter the levels of severity for a finding of disabled or not disabled on the basis of medical considerations alone, or on the basis of medical and vocational considerations.

43 Fed.Reg. 55,358 (1978). In 1980, the Secretary modified the 1978 regulations to state:

(c) *You must have a severe impairment.* If you do not have any impairment(s) which significantly limit your physical or mental ability to do basic work activities, we will find that you do not have a severe impairment and are, therefore, not disabled. We will not consider your age, education, and work experience.

45 Fed.Reg. 55,566, 55,624 (1980) (to be codified at 20 C.F.R. § 416.920(c).

In *Chico v. Schweiker, supra,* the Court noted that:

The Secretary's preamble in the Federal Register reveals that the "severity" regulation, as originally promulgated in 1978, was meant to clarify the 1968 regulation's terms "a slight neurosis, slight impairment of sight or hearing, or other slight abnormality of combination of slight abnormalities" but was not intended "to alter the levels of severity for a finding of ... ['] not disabled['] on the basis of medical considerations alone," 43 F.R. 55358. The recodification in 1980 evinced no change in this expression of the Secretary's intent, 45 F.R. 55574.

710 F.2d at 954 n. 10.

In a January 30, 1980 memorandum, the Appeals Council, while discussing its cumulative findings on appraisal of appealed cases during 1979, discussed its policy regarding findings of severe or not severe impairments. The Appeals Council wrote:

The Appeals Council, therefore, specifically considered the issue of when an impairment(s) should be considered as 'not severe' within the meaning of these regulations. The Council concluded in a minute that the definition contained in regulations 404.1503(c) and 416.903(c) was not intended to change, but was merely a clarification of the previous regulatory terms 'slight neurosis, slight impairment of sight or hearing, or other slight abnormality or a combination or slight abnormalities ...' In other words, an impairment can be considered as 'not severe' only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience.

*Brady v. Heckler, supra* at 919–20, citing *Appeals Council Review of Sequential Evaluation Under Expanded Vocational Regulations* (1980).

 Though the 1968, 1978, and 1980 regulations use vastly different words to describe severe impairment, the standard has not changed throughout the years. In *Brady v. Heckler, supra,* the Eleventh Circuit held that the challenged regulation had not raised the threshold level of severity necessary to satisfy the second step of the five-step sequential evaluation process:

The level of severity needed for a finding of not severe has not changed from the 1968 regulations. The 1978 and 1980 regulations follow the 1968 definition of a non-severe impairment. An impairment can be considered as not severe only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience.

724 F.2d at 920. We adopt the rationale of the *Brady* court. An impairment qualifies as non-severe only if the impairment would not affect a claimant's ability to work regardless whether the claimant was sixty-years old or only twenty-five, whether the

claimant had a sixth grade education or a master's degree, whether the claimant was a brain surgeon, a factory worker, or a secretary. We hold that an impairment qualifies as non-severe only if, regardless of a claimant's age, education, or work experience, the impairment would not affect the claimant's ability to work.

### III.

■■■■ Plaintiff argues that substantial evidence does not support the Secretary's finding that plaintiff does not suffer from a severe impairment. Under 42 U.S.C. § 405(g), "[t]he findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive...." The Supreme Court has defined substantial evidence as " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971), quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938). We may not overturn the Secretary's findings unless this panel determines that substantial evidence does not support those findings. *Kirk v. Secretary*, 667 F.2d 524, 535 (6th Cir.1981), *cert. denied*, 461 U.S. 957, 103 S.Ct. 2428, 77 L.Ed.2d 1315 (1983). The ALJ's findings of fact became the Secretary's findings when the Appeals Council allowed the ALJ's decision to stand as the final decision of the Secretary.

■■■ Plaintiff contends that she presented overwhelming evidence that her mental retardation significantly limited her ability to perform basic work activities described in 20 C.F.R. § 416.921(b). In light of the previous discussion on the interpretation of the severity requirement, we agree. Substantial evidence does not support the ALJ's conclusion that plaintiff does not suffer from a severe impairment. On the administrative record, we cannot conclude that plaintiff's mental retardation would not interfere with her ability to work regardless of her age, education, or work experience.

While the record contains some evidence that plaintiff can take care of her personal needs, plaintiff introduced evidence that she had difficulty understanding, carrying out, and remembering simple instructions, using judgment, and responding appropriately to supervision, co-workers and usual work situations, and dealing with changes in a routine work setting. Plaintiff unsuccessfully attempted several jobs before applying for supplemental security income benefits. These attempts demonstrate that plaintiff's mental retardation significantly limits her ability to perform basic work activities described in 20 C.F.R. § 416.921(b).

Dale Van Remortel, plaintiff's special education teacher, stated in an affidavit that plaintiff's attempts to work in the kitchen at the senior citizens center, sort clothes for a St. Vincent de Paul store, and clean animal cages for the Humane Society as part of the job training program all ended unsuccessfully. Van Remortel noted that plaintiff did not respond appropriately to supervision and co-workers:

> Each of these resulted in her termination because of problems between Jan and co-workers or her work site supervisor (even though these programs were developed for placement of handicapped individuals). Jan had difficulty understanding the basics of employer/employee relationships.
>
> ... due to Jan's limitations, I continually had to watch and supervise Jan to be certain that she performed the various portions of her educational tasks.... if a prospective employer asked me whether I considered Jan to be a capable employee, I would state she is not. I am not able, in good faith, to recommend Jan for competitive employment in a capacity which would not allow her a considerable amount of special consideration, support, and structure.

Randi L. LaMora, a registered nurse with a background working with impaired youngsters and a friend of plaintiff's family, tes-

tified at the administrative hearing about plaintiff's unsuccessful attempt at babysitting. Plaintiff also attempted to work as a waitress in a restaurant. Plaintiff's mother and Randi LaMora testified about plaintiff's failure as a waitress. At the time of the administrative hearing, plaintiff had recently started working at another senior citizens center as a requirement for receiving general assistance benefits. In an affidavit, June Lipinski, plaintiff's work site supervisor reported:

> Although Jan appears to want to work, she is thus far requiring closer supervision and support than is usually required by other persons placed in this position. She is having difficulty in following instructions and in accepting helpful advice from co-workers.

Finally, Pearl Schinderle, plaintiff's foster mother, stated in a affidavit that:

> Jan's main limitations were in her emotional and social development.... Specifically, Jan had great difficulty in controlling her frustration and impulses, in accepting authority figures, in developing relationships with peers and adults, in accepting assistance or advice and in motivating herself. Often, when asked to do something, or when she didn't get her way, she resorted to the use of various acting out behaviors such as tantrums, explosions, and manipulative techniques.

The only evidence of plaintiff's ability to follow instructions is in a report from plaintiff's speech therapist that plaintiff cooperated and appeared to have practiced her speech exercises between sessions. These sessions, however, occurred in a one-on-one supervised relationship, something generally not available in the work place.

Additionally, in Social Security Ruling 82–55: "Title II and XVI: Medical Impairments That Are Not Severe," the Secretary lists twenty examples of impairments that do not qualify as severe. The Secretary included an "IQ of 80 or greater in all major areas of intellectual functioning" in this list. This example indicates that the Secretary considers IQs less than 80 as qualifying as a severe impairment. Plaintiff underwent IQ testing four times over a ten-year period. On each occasion, plaintiff received at least one score below 80.

Given all this evidence, we cannot conclude that plaintiff's mental retardation could not affect her ability to work regardless of her age, education, and work experience. Consequently, we hold that substantial evidence does not support the ALJ's conclusion that plaintiff does not suffer from a severe impairment.

We conclude that plaintiff suffers from a severe impairment under the second step of the sequential evaluation process. Accordingly, we reverse the District Court order dismissing plaintiff's complaint and remand the case with instructions to the District Court to remand the case to the Secretary for completion of the sequential evaluation process.