811 F.2d 604
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Mildred FIELDS, Plaintiff-Appellant,
v.
SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant-Appellee.
 No. 85-1870.
 United States Court of Appeals, Sixth Circuit.
 Dec. 9, 1986.
 
 Before ENGEL, JONES and NELSON, Circuit Judges.
 PER CURIAM.
 
 
 1
 Plaintiff appeals from the district court's grant of summary judgment for the defendant, entered upon the district court's ruling that substantial evidence supported the Administrative Law Judge's ("ALJ") finding that the plaintiff was not disabled and was at fault in receiving $20,161.20 in overpayments made to her by the Social Security Administration ("SSA") between December 1975 and July 1982. We reverse the district court's judgment and remand this case.
 
 
 2
 On July 22, 1974, Mildred Fields filed an application for disability benefits, claiming that she had become unable to work as of May 6, 1974, at the age of 48, because of a bone graft in her left femur that had been performed to remedy a broken leg. She had previously been employed as a kick press operator. SSA initially denied her application because it did not find that her significant impairment would last for twelve months. On a request for reconsideration, Fields asserted that her doctor had told her that her condition would last at least another six months, thus totally precluding her from working for twelve months or more. Based on this, SSA granted disability benefits from the claimed onset date of May 6, 1974.
 
 
 3
 On September 29, 1975, and again on October 21, 1975, SSA concluded that Fields' entitlement to disability benefits would terminate as of November 30, 1975, because her disabling condition had ceased to exist as of September 1975 and the medical evidence showed that the impairment was no longer of sufficient severity to prevent substantial gainful activity. SSA sent a letter to Fields at her home address informing her of this decision. Despite SSA's decision to stop the payment of benefits, Fields continued to receive monthly checks from SSA for several years due to a clerical error. On July 19, 1982, SSA sent another letter to Fields informing her that her checks would no longer be sent and that with respect to any overpayments, she had the right to request a waiver by showing that she was not at fault in receiving the overpayment and that to recover the money from her would cause hardship. Fields was also advised that if she believed that she had become disabled since the time of the initial determination to the contrary, she could file a new application for benefits.
 
 
 4
 On July 21, 1982, Fields filed a new application for disability insurance benefits claiming an onset date of November 1975, and describing her disability as complications due to osteomyelitis and a broken left femur. Her application was denied by SSA on August 6, 1982. On August 31, 1982, her request for reconsideration was denied because SSA concluded that the medical information showed that Fields' fracture had healed, that she could walk without assistance, and that her condition did not prevent her from working.
 
 
 5
 On September 15, 1982, Fields requested a de novo hearing before an ALJ. Fields appeared at the December 15, 1982 hearing with her attorney and testified as follows. She had been unable to work since November 1975 because her left leg had not improved. She had a four-inch pin in her left leg above the knee and had been unable to walk more than one block without pain since 1978. In fact, her leg pained her every day and she was unable to get out of bed without discomfort. She also stated that she had high blood pressure. When she last worked as a kick press operator, which was a standing job, she used crutches, and continued to use crutches through the date of the hearing. She testified that she had no special training or special schooling; her employer would not accept her to return to work; and any job she performed would have to be sedentary. On the issue of fault, she testified that she first received notice from SSA that her disability had ceased in a letter dated July 19, 1982. She denied having received the October 1975 letter advising her that her checks would stop as of November 1975. Finally, as to hardship, she testified that her income was $264.00 per month in welfare payments plus food stamps and that her monthly house payments were $143.00.
 
 
 6
 Evidence was presented at the hearing that three doctors who had examined Fields in 1975 were all of the opinion that she could no longer perform her previous work, which required prolonged periods of standing and/or prolonged walking. Two of the doctors concluded, however, that she could perform a job that required sitting. Dr. Harold Niekamp, an orthopedic surgeon and Fields' attending physician, reported on April 12, 1975, that x-rays showed that the fractured left femur was healing. He further noted that no further surgery was contemplated and Fields' prognosis was good. On August 29, 1975, Dr. Niekamp was of the opinion that Fields' femur had healed and that her upper extremities were in good condition. He finally concluded that she could no longer do her previous shop work.
 
 
 7
 On September 11, 1975, Dr. Maitra, an orthopedic surgeon, performed a consultative examination on Fields and found that she did not appear to be in physical distress. X-rays taken at that time showed that the fracture had healed and Dr. Maitra noted that Fields had recovered satisfactorily. He found no evidence of active infection of the bone, but went on to state that she had some partial impairment of function in relation to continuous use of her lower limbs. He added that she had no impairment of the upper extremities. He finally concluded that she could sit six out of eight hours in a workday and stand and walk for the other two hours.
 
 
 8
 Dr. Bruce Stubbs, an orthopedic surgeon, examined Fields on November 10, 1975. X-rays taken at that time again revealed that the fracture had healed. Dr. Stubbs found no evidence of drainage. He concluded that Fields could not tolerate prolonged periods of standing or walking. He indicated that she might be able to handle a job that allowed her to sit for approximately eighty percent of the time. He finally noted that Fields was young enough to learn another skill, and recommended job training.
 
 
 9
 A vocational rehabilitation counselor reported on September 5, 1975 that Fields' leg had improved. However, her vocational potential was not good because she was a high school dropout and lived in a rural area. The counselor concluded that even if she were medically cleared for employment, it was doubtful that she would be able to find a job.
 
 
 10
 On May 13, 1983, the ALJ denied Fields' disability request and further determined that SSA was entitled to recover the overpayment of benefits that Fields had received between December 1975 and July 1982. The ALJ found that Fields had been able to perform work-related functions, which permitted her to do sedentary work, since September 1975. The ALJ concluded that since Fields' past relevant work included employment where she sat all day using her hands, and her physicians in 1975 were of the opinion that she could perform a sedentary job using her upper extremities, her impairment did not prevent her from doing past relevant work and she was, therefore, not disabled within the meaning of 42 U.S.C. Sec. 423(d)(1)(A) (1982). The ALJ also found Fields at fault for receiving payments of disability insurance benefits since December 1975, on the basis that there was evidence that she had received the SSA's October 1975 letter. The ALJ's decision became the final decision of the Secretary of the Department of Health and Human Services on August 3, 1983 when the Appeals Council declined to review.
 
 
 11
 Fields subsequently commenced this action in the district court. The case was assigned to a magistrate who issued a report on July 25, 1985, recommending that the district court grant summary judgment in favor of SSA. On August 28, 1983, the district court adopted the magistrate's report as the findings and conclusions of the court and entered summary judgment accordingly. Fields now appeals the district court's judgment.
 
 
 12
 The two issues raised on appeal are: (1) whether there is substantial evidence in the record to support the Secretary's denial of benefits; and (2) whether there is substantial evidence in the record to support the Secretary's finding that Fields was at fault in receiving benefits to which she was not entitled and should therefore be required to make restitution.
 
 
 13
 Before addressing these two issues, we must first determine whether the Secretary followed the proper procedure in reaching the conclusion that Fields was not disabled. In Salmi v. Secretary of Health and Human Services, 774 F.2d 685 (6th Cir.1985), we noted that the Social Security Administration has established a five step sequential process under 20 C.F.R. Sec. 416.920 (1986) for evaluating a disability claim. The five steps are as follows:
 
 
 14
 1) The Secretary determines whether the claimant is currently engaged in substantial activity. If so, the claimant is not disabled.
 
 
 15
 2) The Secretary examines the severity of the claimant's impairment. If the impairment is not severe and does not significantly limit the ability to perform basic work activities, the claimant is not disabled.
 
 
 16
 3) The Secretary compares the claimant's impairment to the "Listing of Impairments" in Appendix 1, Subpart P, Regulations No. 4. If the claimant's impairment meets or equals one of the listed impairments, he is found to be disabled.
 
 
 17
 4) The Secretary then determines whether the claimant is able to perform his past work. If so, the claimant is not disabled.
 
 
 18
 5) If necessary, the Secretary considers the claimant's residual functional capacity and the transferability of any skills the claimant may possess to determine whether the claimant qualifies as disabled.
 
 
 19
 Id. at 687-88. Our review of the record reveals that the Secretary failed to make a finding on the severity of Fields' impairment as required by 20 C.F.R. Sec. 416.920. Pursuant to that regulation, the Secretary should have examined the severity of Fields' impairment and determined whether it significantly limited her ability to perform basic work activities. The Secretary failed to do this. Having so found, it is not appropriate for us to go further and pass on the two issues related to substantial evidence. We therefore REVERSE the district court's grant of summary judgment and REMAND this case to the district court with instructions to remand the case to the Secretary for completion of the sequential evaluation process.