880 F.2d 415
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
John C. SHEPHERD, Plaintiff-Appellant,
v.
SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant-Appellee.
 No. 88-6250.
 United States Court of Appeals, Sixth Circuit.
 July 24, 1989.
 
 Before BOYCE F. MARTIN and NATHANIEL R. JONES, Circuit Judges and JULIAN A. COOK,* Jr., District Judge.
 PER CURIAM.
 
 
 1
 John C. Shepherd appeals the denial of Social Security Disability Benefits.
 
 
 2
 John Shepherd, was 46 years old at the time of the hearing. He has a seventh grade education. His past relevant work included working as a heavy equipment operator, truck driver, coal cleaner, coal shooter, and drill operator in the coal mining industry.
 
 
 3
 He alleges that he started experiencing extreme neck pain on March 22, 1980, the date of disability onset. He told one physician that the pain arose while trying to change a flat tire on a truck. He told the administrative law judge that the pain started when he was trying to lift a 55 gallon drum of oil. Shepherd saw and was treated by Dr. Russell Travis. When conservative treatment failed, Dr. Travis ordered a myelogram, which confirmed a herniated disk at C 5-6. On April 30, 1980 an anterior cervical diskectomy and fusion at C 5-6 was performed on Shepherd. On follow-up visits to Dr. Travis, Travis noted that Shepherd was "doing fine" and was "neurologically intact". Dr. Travis noted that Shepherd had an unremarkable post operative recovery, but sometimes complained of low back pain from a prior injury. In June 1980, Dr. Travis released Shepherd, indicating that he could resume full activity in six weeks. In August 1980, Dr. Travis stated that Shepherd was "doing fine" with his cervical problem, but experiencing low back pain. However, Shepherd's power and sensation in his lower extremities were intact, as were his deep tendon reflexes. In September 1980, Dr. Travis noted that Shepherd was doing well with his neck and arm, and that his incision was well healed. Shepherd told Dr. Travis that he had no neck or arm pain. However, he did complain that because of back pain he was unable to return to work. Dr. Travis noted that the prior myelogram for the neck problem and low back pain was negative and showed no herniated disk or other abnormality. He characterized the results of the neck operation as good and encouraged Shepherd to walk and do exercises for his low back.
 
 
 4
 In July 1980, Shepherd also saw Dr. Bushey, who reported Shepherd's neck motion to be near normal with some pain when flexed to an extreme. Shepherd's back experienced no tenderness, and his straight leg raising measured 85 degrees on the right with some pain and 90 degrees on the left. Dr. Bushey's exam also showed that Shepherd's lungs were clear and that his heart was normal. The x-ray of the cervical spine detected narrowing of the fourth cervical interspace consistent with disk degeneration. The x-ray of the lumbar spine pictured normal bone and joint structures. Dr. Bushey diagnosed chronic lumbar strain and post-operative cervical disk.
 
 
 5
 In July 1980, Shepherd also visited Dr. Woolum, his treating physician. Dr. Woolum stated that Shepherd was doing well after his disk surgery and that the pain in Shepherd's lumbar area was probably muscular. In August 1980, however, Shepherd was admitted to the Pineville Community Hospital with back pain. Tests in the hospital revealed that Shepherd's chest was clear, that his heart beat at a regular rate and rhythm, that his cranial nerves were intact, and that his back had marked lumbar tenderness to palpation. The lumbar spine x-ray revealed nothing. Shepherd was diagnosed as having herniated nucleus pulposus. He improved and was discharged after four days.
 
 
 6
 Dr. Woolum saw Shepherd again in December 1980, at which time Shepherd complained of pain in the right scapular area and the lumbosacral area. Dr. Woolum advised Shepherd to continue with exercise and heat treatment. Shepherd saw Dr. Woolum again in May, June, and November of 1981, at which time he complained of chest pains which were unrelated to activity. Dr. Woolum ruled out any heart problems.
 
 
 7
 Shepherd saw Dr. Woolum again in April 1982, at which time Dr. Woolum indicated that Shepherd was doing extremely well except for some numbness in his leg. Dr. Woolum urged Shepherd to walk.
 
 
 8
 Claimant returned to Dr. Woolum eight months later, in December 1982, with pain in his low back. At that time, Dr. Woolum stated that because of his chronic back problems Shepherd would likely never be able to return to active labor.
 
 
 9
 Dr. Acosta, a physician with the Kentucky Division of Disability Determinations, saw Shepherd several times between September 1983 and May 1984. On the form he completed, Dr. Acosta wrote "negative" by the category for neck. Dr. Acosta did indicate that Shepherd had some tenderness in his low back. He also stated that Shepherd had no definite physical impairment at that time.
 
 
 10
 In May and September 1984, Shepherd saw Dr. Woolum because he was vomiting blood and had abdominal pain. Dr. Woolum stated that these were typical ulcer symptoms that were apparently resolved with medicine. In September, Shepherd had a sore throat from a sinus infection. Dr. Woolum prescribed an antibiotic.
 
 
 11
 In October 1985, Dr. Ira Goldberg examined claimant on behalf of the Social Security Administration. His impressions were that Shepherd had atypical chest pain, a history of peptic ulcer disease, and a status-post C 5-6 fusion.
 
 
 12
 In November 1985, Shepherd underwent pulmonary function studies that showed only a mild obstructive pulmonary disease. Without the administration of a bronchodilator, Shepherd achieved a FEV-1 function of 2.5 liters per second or 68% of predicted. In July 1986, Dr. Woolum wrote a letter stating that Shepherd underwent an ephogogastroduodenoscopy in the previous month that revealed reflux esophagitis and antritis. These conditions were treated with medication.
 
 
 13
 At a hearing held before an administrative law judge Shepherd testified that he can drive 1-12 miles before his leg gets numb, that he sometimes wears a neck brace and that he experiences pain and numbness in his neck, left shoulder, arm, fingers, leg, and foot. Shepherd also testified that he suffers from intermittent chest pain, and ulcers that are helped with medication. He claimed that he spends his days watching television and sitting in a porch swing. Shepherd's wife also testified at the hearing. She stated that her husband complains of stiffness, numbness, and shortness of breath. She added that he occasionally helps her around the house, and that he bathes and dresses himself.
 
 
 14
 After evaluating the medical evidence as well as the testimony from Shepherd and his wife, the administrative law judge concluded that despite his severe impairments, Shepherd could engage in a full range of sedentary work. Under the medical-vocational guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2, Table No. 1, Rule 201.19 ("the grid"), the administrative law judge found that Shepherd was not disabled.
 
 
 15
 A claimant will be considered disabled when he or she is unable to perform "any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. Sec. 416.905 (1987). In this case, Shepherd last met the insured status requirements for disability purposes in December 1985. 42 U.S.C. Secs. 423(a), 432(c); Garner v. Heckler, 745 F.2d 383 (6th Cir.1984); Bagby v. Harris, 650 F.2d 836, 839 (6th Cir.) cert. denied, 454 U.S. 1087 (1981). Thus, Shepherd must prove that he became disabled within the meaning of the Act before 1986.
 
 
 16
 Our review is limited to determining whether substantial evidence supports the Secretary's findings and whether the Secretary employed the proper legal criteria in making those findings. 42 U.S.C. Sec. 405(g); Garner v. Heckler, 745 F.2d 383 (6th Cir.1984). Substantial evidence is defined as " 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " Richardson v. Perales, 402 U.S. 389, 401 (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).
 
 
 17
 In order to be better able to determine whether a claimant meets the underlying statutory test for disability--whether considering age, education, and work experience, a medically determinable impairment renders the claimant unable to engage in any substantial gainful activity existing in the economy--the Secretary promulgated regulations that provide for the sequential evaluation of claims for disability insurance pursuant to Title II of the Act. 20 C.F.R. Sec. 404.1520(b)(f) (1987), Farris v. Secretary of Health and Human Services, 773 F.2d 85 (6th Cir.1985). Under this five-step sequential evaluation process of the Regulations, review ends if the Secretary makes a dispositive finding at any point. 20 C.F.R. Sec. 404.1520(a) (1987). Congress approved of the process when it enacted the Social Security Disability Benefits Reform Act of 1984. Salmi v. Secretary of Health and Human Services, 774 F.2d 685 (6th Cir.1985).
 
 
 18
 The five-steps of the Regulations guide analysis as follows:
 
 
 19
 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. Sec. 404.152(b));
 
 
 20
 2. An individual who does not have a "severe impairment" will not be found to be "disabled" (20 C.F.R. Sec. 404.1520(c));
 
 
 21
 3. If an individual is not working and is suffering from a severe impairment that meets the durational requirement and that "meets or equals a listed impairment in Appendix 1" of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. Sec. 404.1520(d));
 
 
 22
 4. If, upon determining residual functional capacity, the Secretary finds that an individual is capable of performing work he or she had done in the past, a finding of "not disabled" must be made (20 C.F.R. Sec. 404.1520(e));
 
 
 23
 5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. Sec. 404.1520(f)).
 
 
 24
 In this case the administrative law judge's findings required analysis through step five. None of the earlier steps proved dispositive because: at step one the administrative law judge determined that Shepherd had not in fact engaged in substantial gainful activity since the alleged disability onset date, at step two the administrative law judge found that he did suffer from a severe impairment, and at step three the administrative law judge found that his impairment met none of the listing's requirements. At step four, the administrative law judge determined that because of his impairments, Shepherd was not capable of performing his past relevant work. The burden therefore, shifted to the Secretary to introduce evidence that Shepherd was capable of performing other gainful work.
 
 
 25
 Step five requires the administrative law judge to determine the claimant's residual functional capacity. Residual functional capacity is a measure of what an individual can do despite limitations that physical and/or mental impairments impose. 20 C.F.R. Sec. 404.1545(a). The Secretary, or administrative law judge at the hearing level, must assess such abilities as walking, standing, and lifting when determining how physical impairments impact residual functional capacity. This case did not involve mental or other non-physical impairments that could affect a residual functional capacity determination.
 
 
 26
 In this case the administrative law judge concluded that despite his physical impairments, Shepherd retained an residual functional capacity for sedentary work.
 
 
 27
 We see no error and affirm.
 
 
 
 *
 The Honorable Julian A. Cook, Jr., United States District Judge for the Eastern District of Michigan, sitting by designation