RONALD LEE GILMAN, Circuit Judge,
dissenting.
I fear that my panel colleagues have sua sponte set sail into the constitutional sea of equal protection without any legal ballast to keep their analysis afloat. To start with, they “readily acknowledge that no party challenges the constitutionality of denying retroactive application of the Fair Sentencing Act to people who were sentenced under the old regime.” Maj. Op. 487. Opining on this unbriefed and unargued issue is thus fraught with the likelihood of running aground on the shoals of uncharted territory.
They further concede that the law establishing the 100-to-l ratio between powder cocaine and crack cocaine for sentencing purposes was constitutional when enacted:
When the old 100-to-l crack cocaine statute was adopted, it presumably did not violate the Equal Protection Clause because there was no intent or design to discriminate on a racial basis. Its adoption was simply a mistake.
Maj. Op. 488.
So far, so good. But then the majority veers off into the abyss with the following analysis:
Since 1986, however, we have gained knowledge of the old statute’s devastating effect on blacks-The discriminatory nature of the old sentencing regime is so obvious that it cannot seriously be argued that race does not play a role in the failure to retroactively apply the Fair Sentencing Act. A “disparate impact” case now becomes an intentional subjugation or discriminatory purpose case. Like slavery and Jim Crow laws, *495 the intentional maintenance of discriminatory sentences is a denial of equal protection.
Id. at 488.
The majority reaches this conclusion without citing a single case in support. This is not due to a lack of diligent research; it is due to the lack of any such cases. The best the majority can do is try to distinguish two Supreme Court decisions (McCleskey v. Kemp, 481 U.S. 279, 107 S.Ct. 1756, 95 L.Ed.2d 262 (1987), and Personnel Administrator of Massachusetts v. Feeney, 442 U.S. 256, 99 S.Ct. 2282, 60 L.Ed.2d 870 (1979)) that even the majority concedes “on first glance might appear to sanction the discrimination at issue here.” Maj. Op. 488. Those efforts at distinguishing McCleskey and Feeney are in vain, however, because binding Sixth Circuit precedent has already foreclosed the majority’s constitutional argument.
The majority reaches the issue of equal protection not directly, but through applying the “constitutional-doubt canon” of statutory construction (also known as “constitutional avoidance,” see Clark v. Martinez, 543 U.S. 371, 384, 125 S.Ct. 716, 160 L.Ed.2d 734 (2005)). Maj. Op. 487. Two conditions are necessary before a court may invoke this interpretative canon: (1) the statute in question must be “susceptible of two constructions,” and (2) one construction raises “grave and doubtful constitutional questions” that the other construction avoids. Id. (internal quotation marks omitted). The present case meets neither condition.
I start with the first condition. This court has already interpreted the Fair Sentencing Act as applied to dozens of defendants who, like the Blewetts, were convicted and sentenced prior to the effective date of the Act. See, e.g., United States v. Hammond, 712 F.3d 333 (6th Cir.2013); United States v. Hollins, No. 12-5182, 505 Fed.Appx. 437, 2012 WL 5477119 (6th Cir. Nov. 13, 2012); United States v. Downs, 487 Fed.Appx. 286 (6th Cir.2012). In each of these decisions, this court has held that the Act is not retroactive to defendants who were convicted and sentenced before its effective date.
The majority therefore errs in employing the constitutional-avoidance canon to select a construction of the Act that is favorable to the Blewetts when this court has already chosen the contrary construction. See Clark, 543 U.S. at 385, 125 S.Ct. 716 (“The canon of constitutional avoidance comes into play only when, after the application of ordinary textual analysis, the statute is found to be susceptible of more than one construction; and the canon functions as a means of choosing between them(emphasis in original)). We are instead bound by Hammond, a prior reported decision that interprets the same statute under the same factual circumstances as the present case. See, e.g., Salmi v. Sec’y of Health & Human Servs., 774 F.2d 685, 689 (6th Cir.1985) (“A panel of this Court cannot overrule the decision of another panel. The prior decision remains controlling authority unless an inconsistent decision of the United States Supreme Court requires modification of the decision or this Court sitting en banc overrules the prior decision.” (internal quotation marks omitted)).
And even if Hammond were not fatal to the cause taken up by my colleagues, their resort to the constitutional-avoidance canon would still be flawed because this court has already answered any “grave and doubtful constitutional questions” raised by the continued application of the old crack-cocaine/powder-cocaine sentencing disparity. Over 20 years ago, this court held that “the one to one hundred ratio of crack to cocaine does not violate Equal Protection Standards.” United States v. *496 Williams, 962 F.2d 1218, 1227 (6th Cir.1992).
Subsequent equal protection attacks on the crack/powder ratio have likewise been rejected. See, e.g., United States v. Reece, 994 F.2d 277, 278 (6th Cir.1993) (holding that the ratio’s disparate impact “may not alone support a finding of invidious discrimination in a facially neutral law”); United States v. Muse, 250 Fed.Appx 700, 701-02 (6th Cir.2007) (noting that the Sixth Circuit has already rejected equal protection arguments for invalidating the 100-to-l ratio and that “[ejvery court of appeals to address the issue has upheld the ratio in the face of similar constitutional challenges”). Just as Hammond resolves any doubt of statutory interpretation regarding the limited retroactivity of the Fair Sentencing Act, so do Reece and Williams resolve any doubt regarding the constitutionality of pre-Act sentences that the Act leaves intact. Moreover, knowledge of the ratio’s disparate racial impact — which is the majority’s rationale for distinguishing the constitutional validity of the ratio’s initial enactment from the constitutional invalidity of its continued enforcement — was recognized and rejected as the basis of the equal protection challenge in Reece. See 994 F.2d at 278 (noting the defendant’s use of statistics to show a disparate racial impact, but holding that evidence of such impact was insufficient because “only purposeful discrimination merits strict scrutiny”).
Another point bears mentioning. The majority’s basic premise is that the continued enforcement of a sentencing regime that equates one gram of crack cocaine to one hundred grams of powder cocaine violates the Equal Protection Clause because it has a known disparate racial impact. Yet the majority apparently has no' problem with the Fair Sentencing Act’s reduction of that disparity to an 18-to-l ratio. Why, however, is a 100-to-l ratio — but not an 18-to-l ratio — an equal protection violation? In my opinion, the lack of any constitutionally relevant distinction between the old ratio and the new ratio further undermines the majority’s equal protection rationale.
Having addressed the shortcomings of the majority’s sua sponte constitutional argument, I turn now to the argument that the Blewetts actually presented: i.e., that the Supreme Court’s interpretation of the Fair Sentencing Act in Dorsey v. United States, — U.S.-, 132 S.Ct. 2321, 183 L.Ed.2d 250 (2012), makes the Act fully retroactive as applied to defendants seeking modification of a mandatory-minimum sentence in a proceeding under 18 U.S.C. § 3582(c)(2). As noted above, however, the Hammond decision has already rejected the Blewetts’ proposed reading of the Fair Sentencing Act, and it did so “in light of Dorsey.” Hammond, 712 F.3d at 336. My colleagues in the majority, moreover, have previously joined in unpublished decisions that reached the same conclusion as set forth in Hammond. See United States v. Mundy, 486 Fed.Appx. 598, 598-99 (6th Cir.2012) (per curiam decision joined by Judge Martin); United States v. Stanley, 500 Fed.Appx. 407, 410-11 (6th Cir.2012) (opinion joined by Judge Merritt). In short, Hammond is the law of this circuit and cannot be overturned by this panel.
But even if we were to approach this issue with no prior circuit precedent to bind us, the Blewetts’ argument would fail because 18 U.S.C. § 3582(c)(2) allows a court to modify a term of imprisonment that has already been imposed only if two conditions are met: (1) the defendant’s sentence was based on a sentencing range that has subsequently been lowered by the Sentencing Commission, and (2) a reduction in the defendant’s sentence would be consistent with the so-called “policy state *497 ment” found at U.S. Sentencing Guidelines § 1B1.10. The Blewetts, however, were sentenced under a mandatory-minimum statute that was subsequently amended by Congress, not a “sentencing range that has subsequently been lowered by the Sentencing Commission.” 18 U.S.C. § 3582(c)(2) (emphases added).
In an effort to satisfy the first condition of 18 U.S.C. § 3582(c)(2), the majority notes that “[t]he statutory mínimums are closely integrated into the structure of the revised guidelines.” Maj. Op. 492. But why this close integration precludes Congress from treating the two sentencing schemes differently is unexplained. See Hammond, 712 F.3d at 335 (holding that the defendant’s mandatory-minimum sentence “has not subsequently been lowered by the Sentencing Commission” and therefore could not qualify for a modification under § 3582(c)(2) (internal quotation marks omitted)).
The Blewetts fare no better under 18 U.S.C. § 3582(c)(2)’s second condition because only those amendments to the Guidelines included in USSG § lB1.10(c) may trigger eligibility for a sentence modification under § 3582(c)(2). USSG § 1B1.10, cmt. n.l(A) (2012). Guideline § lB1.10(c) incorporates Amendment 750 (parts A and C only), which implemented certain aspects of the Fair Sentencing Act. Part A amended the Drug Quantity Table found in USSG § 2D1.1 that is used to calculate sentencing ranges, while part C eliminated the reference in USSG § 2D2.1 to a five-year mandatory-minimum sentence for simple possession of more than five grams of crack cocaine.
In contrast, the Blewetts asked the district court for a sentence modification under 18 U.S.C. § 3582(c)(2) based on the Fair Sentencing Act’s amendment of 21 U.S.C. § 841(b)(1), the latter providing the mandatory-minimum sentences for drug-trafficking offenses. But neither part A nor part C of Amendment 750 includes the changes made to § 841(b)(1). Because the Blewetts seek the benefit of a statutory amendment that was not incorporated into USSG § 1B1.10, they are ineligible for a modification of their sentences. See Hammond, 712 F.3d at 335 (holding that the district court did not have authority to reduce a defendant’s sentence under § 3582(c)(2) because the defendant’s mandatory-minimum sentence “was not an amendment incorporated into the Sentencing Commission’s policy statement”).
The Dorsey decision strongly supports the proposition that the Fair Sentencing Act’s amendment of a statutory mandatory-minimum sentence provides no relief to defendants seeking modification of a sentence under 18 U.S.C. § 3582(c)(2) because changes in criminal penalties generally apply to defendants not yet sentenced, but do not apply to defendants already sentenced. See Dorsey, 132 S.Ct. at 2335. A proceeding under § 3582(c)(2) is a modification of a previously imposed sentence and is not itself a sentencing or resentencing. Dillon v. United States, 560 U.S. 817, 130 S.Ct. 2683, 2690, 177 L.Ed.2d 271 (2010) (“By its terms, § 3582(c)(2) does not authorize a sentencing or resentencing proceeding.”). The Fair Sentencing Act therefore applies to not-yet-sentenced defendants such as those in Dorsey, but does not apply to already-sentenced defendants, such as the Blewetts, who seek § 3582(c)(2) modifications. See Dorsey, 132 S.Ct. at 2335 (distinguishing the initial imposition of a sentence under 18 U.S.C. § 3553 from the modification of a sentence under § 3582(c) and recognizing that disparities “will exist whenever Congress enacts a new law changing sentences,” but concluding that the disparity created by the Court’s decision reflects “the ordinary practice” in federal sentencing); see also Hammond, 712 *498 F.3d at 336 (noting that “Dorsey itself disfavors [retroactive application of the Fair Sentencing Act] in the context of § 3582”).
Finally, the majority contends that “it cannot seriously be argued that race does not play a role in the failure to retroactively apply the Fair Sentencing Act.” Maj. Op. 488. To the contrary, the failure to retroactively apply the Fair Sentencing Act is solely due to a faithful interpretation of the statutory scheme and a recognition of the rule of stare decisis. Congress is of course free to amend the Fair Sentencing Act to make it fully retroactive, but that is a legislative prerogative and not appropriate for this court to do simply by decree.
For all of the reasons set forth above, I respectfully dissent.