968 F.2d 584
 Raymond and Barbara SEGUIN, husband and wife; Albert A.
Oliveto; and Milton M. Shiffman, Plaintiffs-Appellants,
v.
The CITY OF STERLING HEIGHTS, a Michigan municipal
corporation; Sterling Heights City Council, a corporate
body; Stephen M. Rice; Stanley T. Grot; Larry W.
Burkhart; Richard J. Zettel; and Jean Direzze Gush,
Defendants-Appellees.
 No. 91-1268.
 United States Court of Appeals,
Sixth Circuit.
 Argued June 8, 1992.
Decided June 29, 1992.
 
 Joseph E. Mihelich (argued and briefed), East Detroit, Mich., for plaintiffs-appellants.
 Marcia L. Howe, Carol A. Rosati, Cummings, McClorey, Davis & Acho, and Livonia, Mich., Bert T. Ross (argued and briefed) and Paul J. O'Reilly, O'Reilly, Rancilio, Nitz, Andrews & Turnbull, Sterling Heights, Mich., for defendants-appellees.
 Before: KEITH and SUHRHEINRICH, Circuit Judges; and CONTIE, Senior Circuit Judge.
 CONTIE, Senior Circuit Judge.
 
 
 1
 Plaintiffs, Raymond and Barbara Seguin, Albert A. Oliveto and Milton Shiffman, appeal the district court's grant of summary judgment in favor of defendant, City of Sterling Heights, in this action alleging that defendants' zoning practices deprived plaintiffs of their rights to due process, equal protection and just compensation as guaranteed by the fifth and fourteenth amendments.
 
 I.
 
 2
 The plaintiffs, Raymond and Barbara Seguin, Albert A. Oliveto and Milton M. Shiffman, are owners of three adjoining separate parcels of real estate in Sterling Heights, Michigan. Plaintiffs alleged that the city, "through its officials and employees, ... had requested that the plaintiffs develop all three parcels as part of a single development plan." Plaintiffs' First Amended Complaint, Joint Appendix at 46-47. As part of the city's requested comprehensive development of these parcels, the city installed sewers, storm sewers, water and utilities, and charged the properties for the installation of these facilities. The three parcels were each zoned "B-2, Planned Business," under the then existing zoning ordinance.[1] This classification allowed the property to be developed for certain commercial uses.
 
 
 3
 However, on May 31, 1989, the City Planning Commission commenced a public hearing on a proposed, comprehensive new zoning ordinance. In accordance with state law, the Zoning Enabling Act, Mich.Comp.Laws Ann. § 125.584(1), which requires publication of a notice of public hearing not less than 15 days prior to the hearing, notice of the Planning Commission's hearing was published during the week of May 9, 1989. At the May 31, 1989 public hearing, the Planning Commission heard public comment regarding the proposed rezoning of various properties and areas within the city. The public hearing on the new zoning ordinance continued on June 14, June 18, July 12, July 26 and August 9, 1989.
 
 
 4
 Plaintiffs had not been aware of the published notice, and therefore, did not participate in the Planning Commission's public hearing. During the period in which the hearings were taking place, plaintiffs entered into contracts to sell their parcels. On June 15, 1989, plaintiffs Milton M. Shiffman and Raymond and Barbara Seguin accepted offers to purchase their property from Great Lakes-Chicago Retail I, Inc. and the Trammel Crow Company. On June 7, 1989, plaintiff Oliveto accepted an offer to purchase from the same organizations. These purchase agreements were contingent upon the parcels remaining under their current zoning status, B-2, Planned Business. Apparently, no further development or construction had taken place on the parcels by either the plaintiffs or the buyers.
 
 
 5
 At the final meeting held on August 9, 1989, the Planning Commission adopted its final report recommending the zoning districts to be set forth in the new zoning ordinance. The Planning Commission recommended that the zoning classification of many parcels be changed, including those of plaintiffs, which were now to be zoned "0-1, Business and Professional Office District" and "RM-1, Multiple Family Low Rise Residential." The Planning Commission's final report was forwarded to the City Council, which was to hold a public hearing on September 5, 1989.
 
 
 6
 Although notice of the September 5 council meeting had been published during the week of August 21, 1989, the plaintiffs allege that they did not learn of the meeting or the proposed rezoning until "a few days before September 5, 1989." Plaintiffs' First Amended Complaint, Joint Appendix at 46. It is not clear how plaintiffs came to learn about the meeting, although they now complain that the notice procedure was inadequate and that no actual notice was given, although the city knew the names and addresses of those persons who would be affected by the zoning change.
 
 
 7
 Sometime prior to the September 5 council meeting, numerous property owners, including plaintiffs, who disagreed with the Planning Commission's report and recommendation filed protest petitions with the city, objecting to the change in zoning classifications.
 
 
 8
 The City Council held its public hearing on September 5, 1989, giving the public the opportunity to comment on the new zoning ordinance. Plaintiffs Oliveto and Seguin were both present and addressed council, requesting that their parcels remain as previously zoned. In accordance with the requirements of the city's charter, the City Council then introduced the new zoning ordinance for adoption at a later meeting, to be held on September 13, 1989.
 
 
 9
 At the September 13 meeting, council heard further comments from the public. Plaintiff Shiffman was present and addressed the council, recommending that his parcel remain under the old zoning classification.
 
 
 10
 After the public comment period, a primary motion was made to adopt the new zoning ordinance as proposed by the Planning Commission, except with respect to those parcels on which protest petitions were filed. The zoning classification for the protested parcels would remain as existed under the old ordinance, pending referral back to the Planning Commission.
 
 
 11
 Shortly thereafter, numerous secondary motions were made. One such motion was made by Councilman Zettel, who moved to adopt the zoning classifications recommended by the Planning Commission, rather than referring plaintiffs' protest petitions back to the Planning Commission. As such, plaintiffs would be precluded from any further review procedures concerning their properties. Councilman Zettel's motion was adopted by a vote of 6-1. The comprehensive new zoning ordinance, Ordinance No. 278, was then adopted by a 7-0 vote and was published on September 18, 1989.
 
 
 12
 Based on the changed zoning of the plaintiffs' properties, the prospective purchasers were unable to continue with their proposed development. Pursuant to the terms of their contracts, the purchasers revoked their offers to buy the parcels.
 
 
 13
 Under both the zoning ordinance and state law, plaintiffs had the right to seek a variance from the Zoning Board of Appeals which would allow construction of a non-conforming development on their parcels. Plaintiffs never applied for a variance. Furthermore, plaintiffs had the right to file an inverse condemnation action in state court to recover just compensation. However, plaintiffs did not pursue this remedy; instead they chose to seek redress in federal court.
 
 
 14
 Plaintiffs filed a complaint in district court on October 4, 1989, alleging, inter alia, that the city's rezoning violated their rights to equal protection and procedural due process as protected by the fourteenth amendment, constituted a taking of property without just compensation in violation of the fifth amendment, and that defendants conspired to deprive plaintiffs of their civil rights in violation of 42 U.S.C. §§ 1985(3) and 1986.
 
 
 15
 The defendants filed a motion for summary judgment, which was granted by the district court. The court held that plaintiffs' constitutional claims alleging an uncompensated taking of property, a denial of due process and an equal protection violation were not yet ripe for adjudication. In addition, with respect to plaintiffs' procedural due process claim, the district court held that plaintiffs did not possess a vested property interest in the prior zoning classification under state law sufficient to invoke the procedural due process protections of the fourteenth amendment. The district court also held that plaintiffs failed to state a conspiracy claim under either 42 U.S.C. §§ 1985(3) or 1986.
 
 
 16
 The plaintiffs filed a timely notice of appeal.
 
 II.
 
 17
 The plaintiffs contend that the district court erred in dismissing their claims against the city for lack of ripeness. The district court held that the plaintiffs' due process challenge to the zoning ordinance was not ripe because plaintiffs failed to apply for a variance. Moreover, the court held that failure to apply for a variance was fatal to plaintiffs' equal protection challenge because it was impossible to determine whether the city treated plaintiffs differently until the full extent of the new ordinance had been brought to bear on plaintiffs. Finally, the court held that plaintiffs' fifth amendment just compensation claims were not ripe because plaintiffs had not availed themselves of the state's inverse condemnation procedure. We will analyze the ripeness doctrine as it pertains to each one of plaintiffs' claims.
 
 A. Fifth Amendment Claim
 
 18
 A claim that a government regulation constitutes a taking of property in violation of the fifth amendment will not be ripe for adjudication "until the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue." Williamson County Regional Planning Comm'n v. Hamilton Bank, 473 U.S. 172, 186, 105 S.Ct. 3108, 3116, 87 L.Ed.2d 126 (1985) (citing Hodel v. Virginia Surface Mining & Reclamation Ass'n, Inc., 452 U.S. 264, 101 S.Ct. 2352, 69 L.Ed.2d 1 (1981)). The Supreme Court, in Williamson, has defined "finality" in the context of fifth amendment takings claims as including two distinct concepts. First, a zoning determination cannot be deemed final until the plaintiffs have applied for, and been denied, a variance. Id. 473 U.S. at 187-88, 105 S.Ct. at 3117. Second, "if a State provides an adequate procedure for seeking just compensation, the property owner cannot claim a violation of the Just Compensation Clause until it has used the procedure and been denied just compensation." Id. at 195, 105 S.Ct. at 3121. Plaintiffs have failed to meet either of these requirements in the present case.
 
 
 19
 First, the district court held that "[p]laintiffs concede that they neither submitted a development plan nor sought a variance." Joint Appendix at 68. On appeal, plaintiffs do not contest this conclusion, but instead argue that they should be excused from meeting this standard because it would have been futile to apply for a variance. Plaintiffs argue that "the variance procedure is futile for the reason that, given the impotence of the Board [of Zoning Appeals] to amend the ordinance and the large size of the parcels in question, a variance cannot be granted since to do so would amount to amendment of the ordinance." Appellants' Brief at 11. Indeed, if a plaintiff can demonstrate futility, he or she will be excused from complying with the variance requirement. Herrington v. Sonoma County, 834 F.2d 1488 (9th Cir.1987). Assuming the validity of the futility exception, we nevertheless agree with the district court that plaintiffs have not demonstrated that futility exists in this case. Their argument that the Board of Zoning Appeals is "impotent" to grant variances runs directly counter to section 30.02.D of the Sterling Heights Zoning Ordinance, which specifically provides that the Board can grant a variance under certain circumstances. See Sterling Heights Zoning Ordinance § 30.02.D, Joint Appendix at 141 (variance may be granted where there are "exceptional or extraordinary circumstances" or where "necessary for the preservation and enjoyment of a substantial property right."). Whether or not futility exists in this case is not determinative, however, because it is clear that plaintiffs did not meet the second Williamson requirement, as discussed more fully below.
 
 
 20
 In addition to seeking a variance, Williamson requires a plaintiff bringing a just compensation claim to first seek redress under appropriate state procedures. Plaintiffs do not allege that they sought to pursue their just compensation claims under Michigan law before proceeding to federal court. In Macene v. MJW, Inc., 951 F.2d 700 (6th Cir.1991) this circuit held that "[o]nly if the state denies adequate compensation is his claim ripe for consideration by a federal court. No constitutional violation can occur until just compensation is denied." Id. at 704. Relying on Williamson, this court held that Michigan has an inverse condemnation procedure, and since the plaintiff did not attempt to use this procedure, his "taking" claim was not ripe for adjudication. We believe that Macene and Williamson demonstrate that plaintiffs' fifth amendment taking claim is not ripe in the present case, and thus they are precluded from pursuing their claim in federal court.
 
 
 21
 B. Fourteenth Amendment Equal Protection Claim
 
 
 22
 In addressing the plaintiffs' equal protection claim, the district court held that it could not "determine whether defendants treated plaintiffs differently than other similarly situated landowners until the full extent of the City's new zoning ordinance has been brought to bear and the Court can measure the harm, if any, caused to plaintiffs." Joint Appendix at 71. We agree that plaintiffs' action was premature.
 
 
 23
 Where a plaintiff challenges a zoning regulation "as applied," as opposed to making a facial challenge to the regulation, the courts have held that the Williamson final decision requirement must be met. Eide v. Sarasota County, 908 F.2d 716, 722-25 (11th Cir.1990), cert. denied, --- U.S. ----, 111 S.Ct. 1073, 112 L.Ed.2d 1179 (1991); Landmark Land Co. v. Buchanan, 874 F.2d 717 (10th Cir.1989) (Williamson applies with respect to equal protection challenges to zoning regulations); see also Pennell v. City of San Jose, 485 U.S. 1, 108 S.Ct. 849, 99 L.Ed.2d 1 (1988) (dismissing as premature as applied equal protection claim because plaintiffs did not identify any property taken by application of the act).
 
 
 24
 In the present case, plaintiffs have challenged a facially neutral set of policies and procedures, which, they argue, have been applied in an allegedly arbitrary and discriminatory fashion. Because the city "has not reached a final decision with regard to the application of the regulation to the landowner's property, the landowner cannot assert an applied challenge to the decision because, in effect, a decision has not yet been made." Eide, 908 F.2d at 725. Therefore, absent an application for a variance and a final decision on that application, we are unable to determine, at this juncture, whether the city will ultimately deny plaintiffs the equal protection of the laws.
 
 
 25
 Plaintiffs contend, however, that they should be excused from applying for a variance, because such an act would be futile. For the reasons discussed above, we are not satisfied that plaintiffs have demonstrated that the futility exception to the final decision requirement applies here. In the Seventh and Ninth Circuits the courts have held that, until "at least one 'meaningful application' " has been submitted for the local authority's review, futility is not established and a constitutional challenge to local zoning may not be entertained. Eide, 908 F.2d at 726 n. 17; Shelter Creek v. City of Oxnard, 838 F.2d 375, 379 (9th Cir.), cert. denied, 488 U.S. 851, 109 S.Ct. 134, 102 L.Ed.2d 106 (1988); Unity Ventures v. Lake County, 841 F.2d 770, 775 (7th Cir.), cert. denied, 488 U.S. 891, 109 S.Ct. 226, 102 L.Ed.2d 216 (1988). The district court, in the present case, relied in part on this rationale to deny plaintiffs' resort to the futility exception because plaintiffs did not file a single application seeking review from the Board of Zoning appeals.
 
 
 26
 We agree with the Seventh and Ninth Circuits that at least one meaningful application must be submitted as a prerequisite to a plaintiff's attempt to benefit from the futility exception. However, even if we did not adopt such a narrow view of the futility exception, plaintiffs' attempt to invoke it here must still fail because the Board of Zoning Appeals was expressly authorized to grant variances in cases like the present. We are not convinced that plaintiffs would have been denied a variance had they applied, and therefore find that the futility exception is not met in this case.
 
 C. Procedural Due Process Claim
 
 27
 The district court held that the Williamson finality requirement applies to procedural due process challenges to a zoning ordinance, and that, because plaintiffs had not availed themselves of the variance procedure in the present case, their due process claims were not ripe for adjudication. Joint Appendix at 71 (citing Unity Ventures, 841 F.2d at 776). The plaintiffs now contend that the district court's decision was erroneous because the court overlooked recent Sixth Circuit precedent to the contrary. We agree that this circuit's most recent interpretation of the ripeness doctrine in the procedural due process context requires that we find plaintiffs' claims ripe for review.
 
 
 28
 In Nasierowski Bros. Invest. Co. v. City of Sterling Heights, 949 F.2d 890 (6th Cir.1991), this court held that the Williamson final decision requirement does not apply to procedural due process challenges to a zoning ordinance. Rather, the court held that "a procedural due process claim is instantly cognizable in federal court without requiring a final decision ... from the responsible municipal agency." Id. at 894. In cases of the present type, " 'the allegedly infirm process is an injury in itself,' whereas, in the context of a takings claim, the alleged injury ... cannot be assessed with any degree of certainty until the municipality arrives at a final decision." Id. (quoting Hammond v. Baldwin, 866 F.2d 172, 176 (6th Cir.1989)).
 
 
 29
 Consequently, in the instant case, the plaintiffs' injury occurred when the City Council passed the zoning ordinance. It was at that time that the plaintiffs were first subjected to procedures which they claimed violated the Due Process Clause. More specifically, plaintiffs contend that the notice-by-publication requirement, as prescribed by statute, did not comport with due process. See Mich.Comp.Laws Ann. § 125.584(1) (authorizing notice by publication). Rather, they argue that personal notice should be required under the present circumstances. We agree that this is the type of injury that is instantly cognizable in federal court, regardless of whether the city has reached a final decision on the merits of their claim. Because the plaintiffs are making a facial challenge to the statutes themselves, any procedural infirmity would not be cured by the subsequent application of the statute.
 
 
 30
 Defendants recognize that Nasierowski is "problematic," yet offer no convincing reason why it should not be applied here. Instead, they argue "that this court reconsider and overturn the panel's decision in Nasierowski." Appellees' Brief at 17. However, we have no authority to overturn another panel's opinion, Salmi v. Secretary of Health and Human Services, 774 F.2d 685, 689 (6th Cir.1985), and are therefore bound by the Nasierowski decision.
 
 D. Section 1985(3) and Section 1986 Claims
 
 31
 The district court also concluded that plaintiffs' 42 U.S.C. §§ 1985(3) and 1986 claims were not ripe. We agree that the district court reached the correct result. Section 1985(3) provides a means of redressing a conspiracy to deprive an individual of rights guaranteed under the Constitution. Like section 1983, section 1985(3) provides no independent substantive protections. In the present case, plaintiffs' First Amended Complaint alleged a conspiracy to deprive plaintiffs of their equal protection, due process and fifth amendment just compensation rights. Because plaintiffs' fifth amendment and equal protection claims are not ripe for the reasons explained above, the result is the same when violations of these rights are sought to be vindicated under section 1985(3).
 
 
 32
 However, because plaintiffs' due process challenge is ripe, their section 1985(3) claim alleging a conspiracy to deprive them of due process as guaranteed under the fourteenth amendment is also ripe for review. Nevertheless, as the district court pointed out, to succeed under section 1985(3) a plaintiff must demonstrate "some racial, or perhaps otherwise class-based animus behind the conspirators' action." Joint Appendix at 74 n. 8 (citing Griffin v. Breckenridge, 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971)). The plaintiffs in this case did not allege, or prove, that they were members of a "discrete and insular" minority which are accorded "special protection under the Equal Protection Clause because of inherent personal characteristics." National Communication Systems, Inc. v. Michigan Pub. Serv. Comm'n, 789 F.2d 370, 374 (6th Cir.), cert. denied, 479 U.S. 852, 107 S.Ct. 182, 93 L.Ed.2d 117 (1986). Therefore, plaintiffs' section 1985(3) claims are wholly lacking in merit, and were properly dismissed by the district court.
 
 
 33
 Likewise, to the extent that plaintiffs' claims under section 1985(3) have failed, plaintiffs' claims under 42 U.S.C. § 1986 must also fail. Section 1986 imposes liability on those individuals who have knowledge of any of the wrongs prohibited by section 1985, yet fail to prevent them. Without a violation of section 1985(3), there can be no violation of section 1986. Grimes v. Smith, 776 F.2d 1359, 1363 n. 4 (7th Cir.1985). Therefore, plaintiffs' section 1986 claims must be rejected for the same reasons that their section 1985(3) claims have failed.
 
 III.
 
 34
 Plaintiffs next argue that the district court erred in dismissing their procedural due process challenge on summary judgment, concluding they did not have a protectable property interest in the previous zoning classification.[2] In a footnote, the district court held that:
 
 
 35
 The question whether plaintiffs hold a protected property interest depends on "existing rules or on understandings that stem from an independent source, such as state law...." Board of Regents v. Roth, 408 U.S. 564, 577 [92 S.Ct. 2701, 2709, 33 L.Ed.2d 548] (1972). Under Michigan law, a landowner does not possess a vested property interest in a particular zoning classification unless the landowner holds a valid building permit and has completed substantial construction. City of Lansing v. Dawley, 247 Mich. 394, 396-97 [225 N.W. 500] (1929); Schubiner v. West Bloomfield Township, 133 Mich.App. 490, 497 [351 N.W.2d 214] (Mich.Ct.App.1984). Thus, because plaintiffs neither hold a building permit, nor have begun construction, they do not possess a protected property interest under Michigan law.
 
 
 36
 Joint Appendix at 73 n. 6.
 
 
 37
 Plaintiffs counter that under Nasierowski, they have alleged a protected property interest in the prior zoning classification. In that case, this court, interpreting Michigan law, held that
 
 
 38
 [i]n City of Lansing, the Michigan Supreme Court concluded that the property owner plaintiff had no vested property right in an existing land use regulation unless "before the enactment of [a new zoning ordinance] he had done anything of a substantial character towards the construction of the building." Id. (emphasis added). Similarly, in a more recent case, the Michigan appeals court noted that in order to acquire a vested interest in a zoning classification the landowner "would have to ... undertake[ ] acts ... in reliance on the zoning ... of such a nature that a rezoning ... would be to his substantial detriment." Trever v. City of Sterling Heights, 53 Mich.App. 144, 218 N.W.2d 810, 812 (1974) (citing City of Lansing ) (emphasis original).
 
 
 39
 Nasierowski, 949 F.2d at 897 (emphasis original). The court thus concluded that any substantial act undertaken in reliance on a prior zoning classification is sufficient to create a property interest, regardless of whether or not plaintiff actually obtained a building permit or began construction on the zoned site. Because the instant case presents us with a different set of facts, we must independently analyze Michigan law to determine how it would apply to the plaintiffs' cause of action. See, e.g., Grantham & Mann v. American Safety Prod., 831 F.2d 596, 608 (6th Cir.1987) (in diversity cases, federal court must look first to decisions of the highest court in the state).
 
 
 40
 In Bevan v. Brandon Township, 438 Mich. 385, 475 N.W.2d 37 (1991), cert. denied, --- U.S. ----, 112 S.Ct. 941, 117 L.Ed.2d 111 (1992), the Michigan Supreme Court held that, in order for a non-conforming use of land to vest
 
 
 41
 "there must be work of a 'substantial character' done by way of preparation for an actual use of the premises." The actual use which is nonconforming must be apparent and manifested by a tangible change in the land, as opposed to intended or contemplated by the property owner. In this regard, preliminary operations such as ordering of plans, surveying the land, and the removal of old buildings are insufficient to establish a nonconforming use. The test in each case is not whether a little or a lot has been spent in reliance upon the past zoning classifications, but, rather, whether there has been any tangible change in the land itself by excavation and construction.
 
 
 42
 Id. 438 Mich. at 401-02, 475 N.W.2d 37 (emphasis original). Furthermore, vested rights can be acquired where a building permit has been actually issued; however, an application for a building permit is not ordinarily enough to acquire a vested right "even though significant sums may have been expended by the applicant." Id. at 402, 475 N.W.2d 37.
 
 
 43
 We recognize that the Michigan courts have refused to weaken or back away from the strict rule laid down in City of Lansing. Schubiner v. West Bloomfield Township, 133 Mich.App. 490, 498 (1984). Instead, the Michigan courts have continually reaffirmed that a building permit and some substantial construction must have commenced before property rights can vest. Id. at 501, 225 N.W. 500.
 
 
 44
 Because plaintiffs in the case at bar have neither applied for a building permit, nor have begun substantial construction on the property, they do not have a vested right in the previous zoning classification. We do not believe that their contingent contractual agreement with the third-party purchasers was enough to create a vested right under Michigan law.
 
 
 45
 As plaintiffs have no vested property right, they do not have standing to challenge the zoning ordinance on procedural due process grounds. Board of Regents v. Roth, 408 U.S. 564, 569, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972) ("[T]he requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property."). Therefore, the district court correctly concluded that the plaintiffs' procedural due process challenge could not withstand the city's motion for summary judgment.
 
 IV.
 
 46
 For the foregoing reasons, the district court's decision is hereby AFFIRMED.
 
 
 
 [1]
 This zoning ordinance had been in effect since the city's incorporation in 1968
 
 
 [2]
 The district court presented this rationale in the alternative, reasoning that the plaintiffs' due process challenge would not succeed even if the ripeness determination had been in their favor