**HEARNS CONCRETE CONSTRUCTION CO., Plaintiffs,**

v.

**CITY OF YPSILANTI, et al., Defendants.**

No. CIV.02–72796.

United States District Court, E.D. Michigan, Southern Division.

Jan. 23, 2003.

Burke Fossee, III, Hamood & Fergestrom, Troy, MI, for plaintiff.

John S. Gilbreath, Jr., Ypsilanti, MI, Timothy Mulligan, O'Connor, DeGrazia, Bloomfield Hills, MI, for defendant.

### MEMORANDUM OPINION AND ORDER

ANNA DIGGS TAYLOR, District Judge.

#### I.

The Plaintiff, Hearns Concrete ("Hearns"), is the owner of land located at 212 N. Lincoln Street in Ypsilanti, Michigan, consisting of two lots, 82 and 83. In early 1999, a site plan was submitted to the City of Ypsilanti Planning Commission (the "Commission") by Hearns. The proposed expansion of the business was to include the addition of offices to the front of the garage structure located on lot 82. On June 29, 1999, this site plan was denied because it would constitute a "non-conforming use."

On December 15, 1999, the plaintiff submitted a revised site plan, which proposed office use only on lot 83. On April 19, 2000, the Commission approved the revised plan, subject to certain conditions which were an attempt to mitigate the conflict over the land uses. On May 16, 2000, a letter of approval was sent from the Commission to Hearns. The letter mandated that the Plaintiff would need to: (1) obtain a building permit within six months or the approval would expire; and (2) begin construction within two years following the approval date and *diligently pursue completion*.[1] (emphasis added). On August 10, 2000, pursuant to § 122–128 of the City of Ypsilanti Zoning Ordinance, Hearns was issued a building permit.

Plaintiff performed construction work on the project that included clearing the site, construction of the foundations, construction of a masonry wall, and setting up of roof trusses. Hearns contends that the construction work was diligently pursued "to the extent permitted by weather conditions."

Numerous site visits were performed by the City.[2] Based on the October 10, 2001 observations, correspondence was allegedly forwarded to the Plaintiff on October 17, 2001, indicating that, pursuant to the City's Zoning Ordinance, Plaintiff had until April 19, 2002, to complete the project

---

1. *See* § 122–126 City of Ypsilanti Zoning Ordinance.

2. On April 25, May 30, and October 10, 2001, the site was revisited. On each occasion, no progress was documented in the City inspector's photographic and written report.

which had begun on April 19, 2000.[3] Hearns asserts that this correspondence was never received.

The next site inspection was performed on February 14, 2002. According to the Defendants, the site appeared to be unchanged from April 25, 2001. On April 10, 2002, the City made a further inspection, at which time the inspector stated that the same lack of progress existed, and, in addition, the site was said to "constitute a nuisance."

On April 23, 2002, a registered letter was sent to Hearns indicating that the site plan had expired and that a new plan needed to be submitted for approval. The letter indicated that, as of April 19, 2002, no further work on the site could be conducted until the required approvals were allegedly sought, and obtained, anew. In addition to the notice of the expiration of the site plan which was contained in this letter, it is further alleged that Hearns was also informed of a possible remedy (submission of a revised plan) at a meeting between Plaintiff, Ed Koryzno (City Manager) and Nathan Voght (City Planner), on April 29, 2002. There is contention as to whether the roof trusses and roof construction had begun prior to the Plaintiff being informed in writing (April 23, 2002) and in person (April 29, 2002) that the site plan had expired.

On May 4, 2002, pursuant to the Michigan Building Code (the "Code"), a stop work order was issued. The Code provides:

> Upon notice from the enforcing agency, work on any building or structure that is being done contrary to the code or in a dangerous or unsafe manner shall immediately cease. Notice shall be in accord

with section 12 of the act. A person who is served with a stop work order, except for work that the person is directed to perform to remove a violation or unsafe condition is subject to the penalty provisions prescribed in § 23 of the act. R 408.30411.

Hearns continued to work after the stop work order was issued, and he did not appeal the stop work order to the Construction Board of Appeals, as provided for in the State Construction Act and the Michigan Building Code. Instead, Hearns filed this suit, along with an Ex Parte Motion for Temporary Restraining Order and Motion for Preliminary Injunction, on or about June 14, 2002, in State Court. Those motions were heard on June 19, 2002, by Judge Melinda Morris, who set aside the stop work order and enjoined the City from preventing the Plaintiff from continuing construction. On July 9, 2002, the Defendants sought removal to this Court pursuant to 28 U.S.C. §§ 1331, 1441, 1443 and 1446.

In this action, Hearns has alleged eight counts, among them a number of federal claims, including violation of his due process rights, and one count pursuant to 42 U.S.C. § 1983, alleging racial discrimination.

**II.**

The Defendants, in the motion to Dismiss which is now before this court, have challenged the subject matter jurisdiction of the Court based upon the *sine qua non* of ripeness.

"The ripeness doctrine protects federal courts from engaging in speculation or wasting their resources through the re-

---

**3.** There is some confusion in the Defendants' argument as to whether the construction had to have been completed within two years or merely begun and "diligently pursued" dur-

ing the first two years. The cited sections of the City's Zoning Ordinance make no reference to completion within a specified time.

view of potential or abstract disputes ... [The] Court must resolve whether there is sufficient injury to meet Article III's requirement of a case or controversy and, if so, whether the claim is sufficiently mature, and the issues sufficiently defined and concrete, to permit effective decision making by the court." *Digital Properties, Inc. v. City of Plantation,* 121 F.3d 586 (11th Cir.1997). The necessity of ripeness is clear; yet, whether a case or controversy is "sufficiently mature" is at times a matter of case specific determination.

In the instant controversy, the Defendants have argued the proposition that the Commission's decision to issue a stop work order is not immediately reviewable by this Court because the Plaintiff has failed to obtain "a final decision." [4] The first leg upon which the Defendants' position stands is *Williamson County Regional Planning Comm'n v. Hamilton Bank of Johnson City,* 473 U.S. 172, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985). In *Williamson County,* the Supreme Court stated that:

> "[A] claim that the application of government regulations *effects a taking* of a property interest is not ripe until the governmental entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue." *Id.* at 185, 105 S.Ct. 3108. (emphasis added).

The Defendants' reliance on *Williamson County,* however, appears to be misplaced. In *Nasierowski Bros. Inv. Co. v. City of Sterling Heights,* 949 F.2d 890, 894 (6th Cir.1991), the court explained that *Williamson County* governed a "taking" claim, but not a denial of due process claim. The Sixth Circuit made it clear that there are many intangible rights that merit the protection of procedural due process although their infringement falls short of an exercise of the power of eminent domain for which just compensation is required under the Fifth and Fourteenth Amendments. *Nasierowski* at 893–94. The Plaintiff in this case has not asserted a taking claim; rather, it is alleged that due process rights have been violated.

The second case upon which the Defendants rely, here, is *Bigelow v. Michigan Dept. of Natural Resources,* 970 F.2d 154 (6th Cir.1992). This dependence also appears to be unsound. *Bigelow,* wherein the plaintiffs were commercial fisherman who had brought an action against the State alleging a taking without just compensation and denial of equal protection, was a "taking case in which the procedural due process claim was 'ancillary to [the] main issue.'" *Harris v. City of Akron,* 20 F.3d 1396, 1403 (6th Cir.1994). The *Bigelow* Court acknowledged that, "standing alone, the plaintiffs' procedural due process claims might be ripe for review." *Bigelow* 970 F.2d at 159. Even if *Bigelow* were applicable to the facts of this case, moreover, there is reason to believe that its foundation has been undermined by subsequent Sixth Circuit decisions. *See Plonski v. Courtland Twp.,* 1997 WL 33147776, **4–5, 1997 U.S. Dist. LEXIS 17312, *10–12 (W.D.Mich. Sept. 11, 1997) (discussing *Harris v. City of Akron,* 20 F.3d 1396, 1402–03 (6th Cir.1994)), where

---

4. Specifically, the Defendants argue that, pursuant to the State Construction Code and the Michigan Building Code, an appeal process was available to the Plaintiff, whereby he could have obtained a final decision rendering his constitutional claim ripe for review. Therefore, the Commission argues that: (1) the Plaintiff's appeal of the stop work order is controlled by the Stille–Derossett–Hale Single State Construction Code Act, M.C.L. § 124.1501; and (2) the rules found in the Michigan Administrative Code implementing the Michigan Building Code provide for a Construction Board of Appeals wherein the Plaintiff could have appealed the issue of the stop work order. See R 408.30301.

the "Sixth Circuit ignored the holding in *Bigelow* requiring finality as to due process claims because the case was not presented as a 'taking case', but as a 'pure due process case'—the taking claims having been previously dismissed on finality grounds" and also see *Triomphe Investors v. City of Northwood*, 49 F.3d 198, 201 n. 2 (6th Cir.1995) citing "the rule in *Pearson v. City of Grand Blanc*, 961 F.2d 1211, 1212 (6th Cir.1992)), which is the rule from *Nasierowski*. Moreover, the *Triomphe* court follows that rule as precedent even though in its case the substantive due process claim 'was no different from an ordinary takings claim.'"). Again, in this action, no taking claim is asserted and the Plaintiff's due process claim is free-standing. In contrast, the Defendants' ripeness argument appears to be, on close examination, totally without support.

After thorough review of the post-*Nasierowski* decisions, the court in *Plonski* held that the denial of due process claim at issue was ripe for adjudication and that the *Williamson County* finality requirement was not controlling. 1997 WL 33147776, \*\*4–5, 997 U.S. Dist. LEXIS 17312, at \*10–12.[5] Specifically, the court determined that the plaintiff's substantive due process claims challenging the zoning ordinances in question could be reviewed regardless of the *Williamson County* finality requirements. *Id.* at \*2, 1997 U.S. Dist. LEXIS 17312, \*5.

The present case also involves a denial of due process claim, and, therefore, is more closely aligned with the facts of *Nasierowski*[6] and *Plonski* than it is with the facts presented in *Bigelow*.[7] It is alleged here that the Defendants failed "to afford

5. Subsequent to examining "several inconsistent Sixth Circuit opinions," the Court in *Plonski* "determine[d] that the issue of whether due process claims are subject to the *Williamson* finality requirements was settled in this Circuit by the decision in *Nasierowski*." *Id.* The Court went on to state that, "as noted in the *Seguin* decision, this determination is binding within the Sixth Circuit until either the Supreme Court issues an inconsistent opinion or the Circuit Court sitting en banc elects to reconsider the matter." *Id.* (citing *Seguin v. City of Sterling*, 968 F.2d 584, 590 (1992); *Salmi v. Secretary of Health & Human Services*, 774 F.2d 685, 689 (6th Cir.1985)).

6. In *Nasierowski* a landowner brought an action under *42 U.S.C. § 1983* claiming that a city had violated his rights to procedural due process by enacting a zoning amendment apparently designed to prevent the plaintiff from proceeding with a proposed development. However, the plaintiff did not present a takings claim, and relied solely on his claim for procedural due process. *See Bigelow* at 159. The Sixth Circuit held that "a procedural due process claim is instantly cognizable in federal court without requiring a final decision ... from the responsible municipal agency." *Nasierowski*, 949 F.2d at 894.

7. The applicability of *Bigelow* to a due process claim such as the instant one is not at all clear. *See Plonski*, 1997 WL 33147776, \*2, 1997 U.S. Dist. LEXIS 17312, at \*5 ("In *Bigelow* ... the Sixth Circuit Court of Appeals applied the finality doctrine to both taking claims and procedural due process claims. In so doing, it noted that previous Sixth Circuit case law—referring to *Seguin v. City of Sterling*, 968 F.2d 584, 589 (1992) and *Nasierowski Bros. Inv. Co. v. City of Sterling Heights*, 949 F.2d 890 (6th Cir.1991)—held that due process claims are immediately cognizable in federal court without the need for exhaustion. It nevertheless decided to limit the prior Sixth Circuit holdings and to adopt the holding of the Ninth Circuit Court of Appeals in *Hoehne v. San Benito County*, 870 F.2d 529, 532 (9th Cir.1989)—which determined that when substantive and procedural due process claims arise from a taking the finality requirements must be met before those claims could be asserted ... It is difficult to say whether other panels of the Sixth Circuit have accepted the change in law that the *Bigelow* decision sought to establish.") Even if *Bigelow* were found to be applicable to a case such as the present one, the Court in *Bigelow* confined its holding to circumstances where the taking claim takes center stage. *See Bigelow* 970 F.2d at 160 ("The circumstances in this case

due process" by: (1) failing to notify the Plaintiff of the intention to issue the stop work order; (2) failing to notify the Plaintiff of the reasons for the stop work order; (3) failing to afford the Plaintiff an opportunity to be heard on the subject of issuance of that order; (4) issuing the stop work order without a valid governmental purpose; and (5) issuing the stop work order arbitrarily and capriciously. Accordingly, this Court is constrained to apply the analysis presented in *Nasierowski* and its progeny.

### III.

■ The Defendants are moving to dismiss the complaint for lack of ripeness via two different procedural grounds: Fed. R.Civ.P. 56(c) and 12(b)(6). However, a lack of ripeness claim is properly construed as a motion to dismiss for lack of subject matter jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1). *See Bigelow,* 970 F.2d at 157.

■ The Sixth Circuit applies different standards to the Rule 12(b)(1) motion depending upon whether the movant makes a facial or factual attack on the plaintiff's complaint. *See Ohio Nat'l Life Ins. Co. v. United States,* 922 F.2d 320, 325 (6th Cir.1990). A Rule 12(b)(1) attack that is facial in nature, i.e., that it does not dispute the facts underlying the ripeness of the complaint,[8] as opposed to factual, is a direct attack on the both the sufficiency of the pleadings and the subject matter jurisdiction of the challenged court. *See United States v. Ritchie,* 15 F.3d 592, 598 (6th Cir.1994). In reviewing a facial attack, "the court must apply the same standard applicable to Rule 12(b)(6) motions . . . the Court will consider the material

allegations of fact set forth in the complaint as being true and construe them in a light most favorable to the nonmoving party." *Id.*

This Rule 12(b)(1) ripeness claim is composed of distinctive procedural and substantive due process components that must be resolved independently. It is only upon determining that a claim is ripe for review that the applicable Rule 12(b)(6) motion can be addressed. If a Rule 12(b)(6) claim can be reached, and it contains multiple components, its due process targets—substantive or procedural—must be addressed separately.

*The Procedural Due Process Claim*

■ A procedural due process claim is instantly cognizable in federal court without requiring a final decision on a proposed development from the responsible municipal agency. (*See Nasierowski* 949 F.2d at 894–95) ("if the claimed injury is the infirmity of the process, neither a final judgment nor exhaustion of administrative remedies is required."). In *Nasierowski,* the issuance of a new zoning designation by the board was the act triggering a due process claim; here, the issuance of the stop work order was an act in and of itself, instantly manifesting a mature procedural due process claim. Accordingly, this procedural due process claim is ripe for review and can pass through to analysis under Rule 12(b)(6). *See Harris v. City of Akron,* 20 F.3d 1396, 1401 (6th Cir.1994) (reaching the Rule 12(b)(6) motion only after finding that the procedural due process claim was ripe for review).

■ In the Sixth Circuit, a plaintiff states a § 1983 procedural due process claim through one of two methods:

---

. . . are quite different from those in *Nasierowski* . . . [t]he key issue in this case is whether the state properly denied full compensation to the plaintiffs for their fishing licenses.").

8. In the present case, the facts underlying the ripeness claim for example, whether the appeal process has been instituted by the Plaintiff—are not in dispute.

"(1) [by] demonstrating that he is deprived of property as a result of established state procedure that itself violates due process rights; or (2) by proving that the defendants deprived him of property pursuant to a 'random and unauthorized act' *and* that available state remedies would not adequately compensate for the loss." *Macene v. MJW, Inc.*, 951 F.2d 700, 706 (6th Cir.1991) (emphasis in original) (quoting *Collins v. Nagle*, 892 F.2d 489, 497 (6th Cir.1989)).

 Under the first method the Plaintiff would have to have alleged that the fundamental elements of procedural due process—notice and an opportunity to be heard—were absent from the process itself. *See Yellow Freight Sys., Inc. v. Martin*, 954 F.2d 353, 357 (6th Cir.1992). Because the Plaintiff does not allege that there is an infirmity in the process itself,[9] he fails to state a claim for which relief can be granted under the first method.

The Plaintiff also fails to state a claim under the second method for establishing a procedural due process claim. In the present case, the complaint never hints at, let alone alleges, that the stop work order was a random event or that the post-deprivation remedies that the state provides would not adequately compensate the Plaintiff. Under such conditions, the Plaintiff must be denied. *See Parratt v. Taylor*, 451 U.S. 527, 543, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981) (rejecting a procedural due process claim where there was no contention that the procedures themselves were inadequate), *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986).

*The Substantive Due Process Claim*

 A substantive due process claim is ripe when it presents an "existing, substantial controversy, not hypothetical questions or possibilities." *Dixie Fuel Co. v. Comm'r of Soc. Sec.*, 171 F.3d 1052, 1057 (6th Cir.1999) (quoting *City Communications, Inc. v. City of Detroit*, 888 F.2d 1081, 1089 (6th Cir.1989)). Here, the alleged injury, that development plans have been indefinitely delayed, exacerbated the Defendants' alleged arbitrary and capricious issuance of the stop work order. *See Pearson v. City of Grand Blanc*, 961 F.2d 1211, 1215 (6th Cir.1992) (stating that under prevailing Sixth Circuit precedent, "the very existence of an allegedly unlawful zoning action, without more, makes a substantive due process claim ripe for federal adjudication"); *But cf. Bigelow* at 160 (finding that the procedural due process claim was not ripe, but not reaching a determination about substantive due process rights); *Vashi v. Charter Township of West Bloomfield*, 159 F.Supp.2d 608, 617 (E.D.Mich.2001) (in a dispute over the ripeness of a substantive due process claim "[t]he dispositive issue is whether the ... Planning Commission['s] decision was a final decision of the Township."). Because the substantive due process claim is ripe for review, the court must next analyze the substantive due process claim to see if it can survive the Defendants' Rule 12(b)(6) motion.

 It is well-established that "citizens have a substantive due process right not to be subjected to arbitrary or irra-

---

9. Conceptually, in the case of a procedural due process claim, "the allegedly infirm process is an injury in itself." *Bigelow*, 970 F.2d at 159 (quoting *Hammond v. Baldwin*, 866 F.2d 172, 176 (6th Cir.1989)). This type of injury would have "accrued and attached *im-*

*mediately*" when the City issued the stop work order without providing for notice or an opportunity to be heard in its regulations. *Nasierowski*, 949 F.2d at 894 (emphasis added); *See also Seguin*, 968 F.2d 584.

tional zoning decisions." *Zinermon v. Burch,* 494 U.S. 113, 115, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990) (explaining that "the Due Process Clause contains a substantive component that bars certain arbitrary, wrongful government actions 'regardless of the fairness of the procedures used to implement them'") (quoting *Daniels v. Williams,* 474 U.S. 327, 331, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986)); *Richardson v. Township of Brady,* 218 F.3d 508, 512 (6th Cir.2000). Thus, to state a substantive due process claim in the context of a zoning case, a plaintiff must establish that (1) a constitutionally protected property or liberty interest exists, and (2) that ·constitutionally protected interest has been deprived through arbitrary and capricious action. *See Silver v. Franklin Township, Bd. of Zoning Appeals,* 966 F.2d 1031, 1036 (6th Cir.1992) ("To establish a violation of substantive due process, a plaintiff must first establish the existence of a constitutionally-protected property or liberty interest."); *see also Pearson,* 961 F.2d at 1222 ("The administrative action will withstand substantive due process attack unless it 'is not supportable on any rational basis' or is 'willful and unreasoning action, without consideration and in disregard of the facts or circumstances of the case.'").

■ In *Buckeye Community Hope Foundation v. City of Cuyahoga Falls,* the Sixth Circuit recognized that a developer has a constitutionally protected property interest in a zoning permit when the zoning permit complied with the existing zoning regulations and the site plan had already been approved. 263 F.3d 627, 642 (6th Cir.2001). Hearns has alleged that his proposed development complied with existing zoning regulations and there is no dispute as to whether it had already been approved by the Commission. Thus, under *Buckeye Community,* Hearns has alleged a constitutionally protected property interest, thereby satisfying the first element of his substantive due process claim.

■ As to the second element of the substantive due process claim, the Plaintiff alleges that the Defendants acted "arbitrarily and capriciously" to deny him of his constitutionally protected property interest when they: (1) denied and withdrew approval for the site plans (Complaint, ¶ 46); and, (2) issued the stop work order (Complaint, ¶¶ 57–58). Based on allegations such as these and a liberal reading of the Complaint, Hearns has sufficiently plead the arbitrary and capricious element of a substantive due process claim. *See, e.g., Tri–Corp v. Praznik,* 33 Fed.Appx. 742, 748 (6th Cir.2002).

## IV.

The Defendants have moved for summary judgment under Fed.R.Civ.P. 56(c) as to the validity of the stop work order. Because there are several genuine issues of material fact surrounding the validity of the stop work order, the motion for summary judgment must be denied.

■ As an initial matter, the two sides do not agree on the date of approval from the Commission. The Defendants claim that it is effective on May 16, 2000, when the letter of approval was sent from the Commission to the Plaintiff; the Plaintiff claims that the site plan was "issued" on May 31, 2000. On the one hand, Defendants' Exhibit E (Letter of May 16, 2000) states that "[t]he City ... has reviewed and approved the site plan ... subject to ... [a] revised site plan inclusive of the changes mandated by the Planning Commission be[ing] received." On the other hand, Plaintiff's Exhibit D contains a "Site Plan" that is stamped "Approved May 31, 2000," and includes a revision date of May 30, 2000. Thus, a question of fact remains

as to whether site approval was effective as of May 16, 2000 or May 31, 2000.

■ There is further contention as to whether the roof trusses and roof construction had begun prior to the Plaintiff being informed in writing (April 23, 2002) and in person (April 29, 2002) that his site plan had expired. The resolution of this issue goes to the heart of whether construction was "diligently pursued" as was required under the terms of the Zoning Ordinance.

■ Finally, in his affidavit the Plaintiff claims to have diligently pursued construction to the extent permitted by weather conditions. The Defendants' claim that their exhibits establish the contrary. Which side is more credible creates a genuine issue of material fact. Accordingly, the Defendants' Motion pursuant to Rule 56(c) must be denied.

### V.

In the present case, Cheryl Farmer as Mayor, Megan Gibb as the Community and Economic Development Department Director, Nathan Voght as a Planner and Charles Boulard as Building Director are individual defendants. Both sides agree that they were acting in their positions as government officials. These individual defendants seek qualified immunity.

■ Once it is determined that a plaintiff has stated a cognizable constitutional claim, we are free to address whether the defendants are entitled to qualified immunity. *See Triomphe*, 49 F.3d at 204; *Black v. Parke*, 4 F.3d 442, 445 (6th Cir.1993). A good faith immunity issue presents a threshold question to be resolved as early as possible. *Harlow v.*

*Fitzgerald*, 457 U.S. 800, 816, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). The question of immunity is solely a legal one, to be determined by the trial court. *Donta v. Hooper*, 774 F.2d 716 (6th Cir.1985), *cert. denied*, 483 U.S. 1019, 107 S.Ct. 3261, 97 L.Ed.2d 760 (1987). Presentation of genuine issues of material fact on the elements of a claim will not preclude summary judgment if the defendants are immune. *Wysinger v. Benton Harbor*, 968 F.Supp. 349, 352 (W.D.Mich.1997). . Qualified immunity is an entitlement to "immunity from suit" and not merely an immunity from liability.

■ Generally, it can be said that "government officials performing discretionary functions ... are shielded from liability for civil damages in so far as the conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow*, 457 U.S. at 818, 102 S.Ct. 2727. The Sixth Circuit has established a two-step process in deciding questions of qualified immunity. *See Hoover v. Radabaugh*, 307 F.3d 460, 465, 2002 FED App. 347P (6th Cir.2002). The initial inquiry into the substance of the qualified immunity defense is whether the plaintiff alleges a constitutional violation. *Id.*

■ Here, the individual defendants' alleged unconstitutional motivations form the basis for the § 1983 due process claim.[10] When the "defendants' intent is at issue, 'summary judgment is particularly inappropriate.'" *Hoover*, 307 F.3d at 467 (quoting *Marohnic v. Walker*, 800 F.2d 613, 617 (6th Cir.1986)); *Bloch v. Ribar*, 156 F.3d 673, 678 (6th Cir.1998). In the present case, it is averred that the individ-

---

10. As noted above, Hearns also asserts a claim under 42 U.S.C. § 1983 for racial discrimination. Whether that alleged illegitimate racially-motivated discrimination forms

some portion of the alleged "personal ... considerations" animating the § 1983 due process claim is unclear from the record.

ual defendants "were motivated by personal and or (sic) political considerations, did not act for legitimate government purpose," acted arbitrarily and capriciously in denying and withdrawing approval of site plans, and intentionally ordered a work-stop without attempting to establish that the site plan was valid. (Complaint, ¶¶ 22, 46, 57–58). The Plaintiff's Affidavit and allegations create a genuine issue of material fact as to the nature of the individual defendants' motivations for issuance of the stop work order. The weight of these contentions militates against the granting of summary judgment. *See Montgomery v. Carter County,* 226 F.3d 758, 771 (6th Cir.2000) (concluding that where, on the basis of the record, a reasonable trier of fact could conclude that the municipal defendants acted for a reason that had "no connection however tenuous to some at least minimally plausible conception of the public interest," the defendants were not entitled to summary judgment on the basis of qualified immunity.).

The second inquiry is into whether the alleged violation involved "clearly established constitutional rights of which a reasonable person would have known." *Dickerson v. McClellan,* 101 F.3d 1151, 1158 (6th Cir.1996). The "contours of the right must be sufficiently clear that a reasonable official would understand what he is doing violates that right." *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). The doctrine applies an objective standard which does not examine an officer's subjective state of mind. *Harlow,* 457 U.S. at 816, 102 S.Ct. 2727. As noted above, the Plaintiff alleges

that his well-established due process rights were violated.

## VI.

The remaining state law claims are dependent upon the resolution of the summary judgment motion as to the applicability of The Michigan Governmental Immunity Statute, M.C.L. § 691.1407; MSA 3.996(107), which provides:

> Except as otherwise provided in this act, all governmental agencies shall be immune from tort liability in all cases wherein the government agency is engaged in the exercise or discharge of a governmental function. Except as otherwise provided in this act, this act shall not be construed as modifying or restricting the immunity of the state from tort liability as it existed before July 1, 1965, which immunity is affirmed.

Governmental immunity is to be broadly construed. *See Ross v. Consumers Power Co* (On Rehearing), 420 Mich. 567, 363 N.W.2d 641 (1984). Unless one of the narrowly drawn exceptions applies in a claim, the immunity protects agencies and employees from suit. *Id.*

The immunity would exempt Farmer as the highest official in the City,[11] and Gibb, Boulard and Voght would be covered as employees of a governmental agency.[12] According to the Defendants, by acting within the scope of their authority, all of the above persons are protected by immunity from state law claims.[13] However, Michigan's governmental immunity statute does not protect a defendant from liability for his or her intentional acts.[14] Hearns maintains that the Defendants' intentional or capricious issuance of the stop

---

**11.** M.C.L. 691.1407(5).

**12.** M.C.L. 691.1407(2).

**13.** *See Ross, supra;* M.C.L. 691.1407(2) and (5).

**14.** *Hullett v. Smiedendorf,* 52 F.Supp.2d 817, (W.D.Mich.1999) (explaining that, "because a defendant who commits an intentional tort is even more culpable than a defendant who is grossly negligent ... the gross negligence exception in M.C.L. § 691.1407(2) must be read to include intentional conduct"); *Littleton v.*

work order, with no regard for his rights, was an abuse of municipal power.

To grant a motion for summary judgment in this instance there must no genuine issue of material fact as to whether the individual defendants acted intentionally to harm the interest of the Plaintiff. The single affidavit of the Plaintiff states that the "individual defendants intentionally ordered" the stop work order without attempting to establish that the site plan was valid. When read in conjunction with the other allegations, this statement implies that the individual defendants issued the stop work order *with the intent to harm his interests.* Because the actions forming the basis of the state law claims are essentially those underlying the federal claims, and the latter are sufficient to survive summary judgment on the evidence presented, the Defendants' motion is denied.[15]

For the foregoing reasons,

IT IS ORDERED that the defendants' motion for dismissal is GRANTED as to the procedural due process claim, and DENIED as to the substantive due process claim; and, that the motion for summary judgment is DENIED IN ITS ENTIRETY.

IT IS SO ORDERED.

---

*City of Detroit,* 2002 WL 31008837 (E.D.Mich. August 20, 2002) ("[A]n individual government employee's intentional torts are not shielded by the immunity statute.").

15. The Plaintiff has also moved for a Writ of Mandamus. The Sixth Circuit has stated that a party seeking a Writ of Mandamus must "satisfy two conditions: (1) that there are no other adequate means for the party to obtain the desired relief, and (2) that the party has a clear and indisputable right to issuance of the writ." *Golden v. Kelsey–Hayes Co.,* 73 F.3d 648, 658 (6th Cir.1996). In the instant action, there are numerous State and Federal mechanisms available to the Plaintiff as demonstrated by the issuance of an injunction in the state court proceedings, and as outlined in the instant Opinion. Because the first condition necessary for issuance of a Writ of Mandamus cannot be satisfied, the Court need not reach the second. Accordingly, the Plaintiff's request for this form of extraordinary relief is denied.